BOSTON-EDISON PROTECTIVE ASSOCIATION *v.* TEAHEN.

1. COVENANTS—ROOMING HOUSES—LACHES—LAPSE OF TIME—CHANGE OF CONDITIONS.

  Defendant operators and owners of rooming house located on lot restricted to use for single private-dwelling purposes only failed to make a showing of laches, where it appears that notwithstanding the use of the premises as a rooming house for about 17 years before present suit was instituted, defendants had made no substantial expenditures for altering the character of the residence.

2. EQUITY—LACHES—LAPSE OF TIME—CHANGE OF CONDITIONS—PREJUDICE.

  Lapse of time alone is not sufficient to constitute laches as there must also be a change of conditions rendering it inequitable to enforce the claim or such a showing as establishes that the defendants raising the defense were prejudiced by the delay.

3. COVENANTS—WAIVER—ROOMING HOUSES.

  Waiver of restrictions against operation of rooming house on defendants' lot *held,* not substantiated, where record shows that plaintiffs have been active in attempting to prevent violations on the part of owners of restricted lots.

4. EQUITY—LACHES.

  The doctrine of laches is founded upon long inaction to assert a right, attended by such intermediate change of conditions as renders it inequitable to enforce the right.

5. SAME—LACHES—VESTED LEGAL TITLE OF RECORD.

  The doctrine of laches has little, if any, application as to a vested legal right based upon a title of record for the world to see.

---

REFERENCES FOR POINTS IN HEADNOTES

[1–6] 14 Am Jur, Covenants, Conditions and Restrictions § 340; 19 Am Jur, Equity § 489 *et seq.*

[1, 3, 6] 14 Am Jur, Covenants, Conditions and Restrictions § 295 *et seq.*

6. Covenants — Zoning Ordinance — Public Policy — Rooming
   Houses—War Emergency.
   Fact that housing shortage impelled city council to lift restric-
   tions against operation of rooming houses in certain zones dur-
   ing war emergency period upon application of owner or oc-
   cupant for a permit would not affect determination as to
   claimed violation of restrictive covenant against such oper-
   ation, where defendants had made no application for a
   permit and emergency had been declared ended before suit
   was commenced.

Appeal from Wayne; Ferguson (Frank B.), J.
Submitted June 4, 1953. (Docket No. 36, Calendar
No. 45,858.) Decided October 5, 1953.

Bill by Boston-Edison Protective Association, a
Michigan corporation, and others against James M.
Teahen and others to restrain use of building as
rooming house. Decree for plaintiffs. Defendants
appeal. Affirmed.

*Henry R. Bishop,* for plaintiffs.

*Craig Thompson,* for defendants.

Carr, J. This suit was instituted on November 13,
1950, for the purpose of obtaining injunctive relief
against the defendants. There is no serious dispute
as to the actual facts but the parties are not in ac-
cord as to the inferences to be drawn therefrom. In
1926 defendants Teahen became the owners of prop-
erty described as lot No 509 and the northerly 68-1/2
feet of lot No 510 in Voigt Park Subdivision, quarter
section 36, 10,000-acre tract, in the city of Detroit.
The plat of said subdivision was recorded on De-
cember 1, 1902. Subsequent conveyances of lots
contained provisions limiting the use and occupation
thereof to single private-dwelling houses and dwell-
ing-house purposes only.

It is conceded that defendants Teahen knew of the restriction in question at the time they acquired their property. At that time the house on the west 100 feet of said lots, referred to in the record as 35 Edison avenue, was in use as a single residence. It is a fair inference from the record that Mr. and Mrs. Teahen did not at any time actually occupy the premises themselves. The proofs disclose that it was in the possession of other parties, successively, as vendees under land contracts or as lessees, and that such situation continued at least until the hearing of the instant case in the trial court. Beginning in 1933 each party in possession took roomers and as a practical proposition the residence was used as a rooming house, some efforts being made to conduct the operation thereof in a manner that would not attract the attention of the public generally.

The individual plaintiffs in the case allege that they are members of the Boston-Edison Protective Association, which was formed primarily to bring about the enforcement of building and use restrictions affecting a portion of Voigt Park Subdivision, consisting of properties fronting on or adjacent to Chicago boulevard, Boston boulevard, Longfellow avenue and Edison avenue. Other than the Association, the plaintiffs are the owners of lots in the subdivision, located within the part above indicated. Prior to 1938 it does not appear that efforts were made by plaintiffs, or any of them, to prevent the use of 35 Edison avenue for the accommodation of roomers. Thereafter the Association from time to time called the situation to the attention of defendants Teahen, protesting against the violation of the restriction. An attempt was made to obtain an agreement for the discontinuance of the use in question but such agreement, if made, was not carried out, although defendants Teahen caused to be re-

moved from their building a fire escape that had been previously erected.

In 1946 suit was brought by the Association and others against defendants Teahen and the parties then in possession of the property for the purpose of enjoining the continuance of the rooming-house business. The bill of complaint in said case was filed on April 3, 1946. The case was not brought on for trial, but in November, 1949, the parties entered into a stipulation in which they agreed that the defendants should discontinue the use of the premises in question for rooming-house purposes and that in the event of failure to comply with such undertaking the court might enter a final decree "finding that said property is subject to valid, subsisting and enforceable building and use restrictions limiting the use thereof to that of a dwelling place for a single family only; further finding that there has been no waiver, acquiescence, laches or estoppel and permanently enjoining and prohibiting the said defendants and each of them, and their successors and assigns, from using said premises and permitting the same to be used as a rooming house or as a place of abode for more than 1 family, and from using the same or permitting the same to be used for any other purpose than that of a single private dwelling or residence in accordance with said building and use restrictions."

On the 3d of May, following, the court entered an order discontinuing the case, reciting therein as follows:

"It is further ordered that the use of said premises as a rooming house or boarding house has been discontinued and there are no roomer or boarders now occupying said premises.

"It is further ordered that said premises are subject to valid, subsisting and enforceable restrictions

limiting the use thereof to that of a single private-dwelling house.

"It is further ordered that there has been no waiver of said restrictions or laches on the part of plaintiffs, and the said restrictions are binding upon the defendants and any other persons acquiring an interest in said premises by, through or under the defendants or any of them since the commencement of this suit."

Following the discontinuance of the above-mentioned case the party in possession, who had been joined as a defendant with Mr. and Mrs. Teahen, vacated the premises. On the 15th of June, 1950, the property was sold to Mrs. Nellie Tetzlaff, one of the defendants in the instant suit, on land contract. Mrs. Tetzlaff went into possession and proceeded to operate a rooming house thereon. Plaintiffs allege in their bill of complaint that defendants Paul Tetzlaff and Sue Frye assisted in the operation as agents and employees of the vendee. The trial judge found that such was the fact and, concluding that the plaintiffs were entitled to the relief sought, entered a decree against all defendants enjoining the use of the west 100 feet of defendants Teahen's lots for any uses other than those of a single private dwelling. Defendants have taken an appeal, asserting that relief should have been denied to the plaintiffs on the ground that they were guilty of laches in failing to act with due promptness for the protection of their rights. It is also urged that plaintiffs failed to show special injury to themselves or their respective properties, that such showing was requisite to the granting of relief, and that under the circumstances of the case the decree was inequitable.

It is not disputed that the premises referred to as 35 Edison avenue were subject to the restriction as to use which the plaintiffs seek to enforce. Concededly defendants have acted in total disregard of such re-

striction. The property has been used for several years past for rooming-house purposes. It does not appear, however, that these defendants or any prior occupant of the premises during the period in question made any substantial expenditures for the purpose of altering the character of the residence. Apparently the property was used for the accommodation of paying guests in the same condition in which it was when occupied as a single residence prior to its purchase by defendants Teahen. There is nothing in this record on which to predicate a finding that defendants, or any of them, were prejudiced because of the failure of the plaintiffs to institute suit prior to the action brought in 1946. Instead of being injured because of plaintiffs' alleged laches, it is apparent that those engaged in the rooming-house operation, and deriving financial gain therefrom, were actually benefited by the delay in starting suit. Mere lapse of time is not sufficient to constitute laches. There must be also a change of conditions rendering it inequitable to grant relief to a party or parties seeking it, or a showing of prejudice resulting from delay. See *Tilley* v. *Brady,* 323 Mich 547, 551, and prior decisions there cited.

The suggested claim that other violations of the building restrictions have occurred in the subdivision and that, because of the situation in this respect, the right of plaintiffs to insist on the observance by defendants of the limitation imposed on the use of their property should be regarded as waived is without merit. The record clearly indicates that since 1938 the plaintiff Association and its members have been active in attempting to prevent violations on the part of the owners of restricted lots.

It may be noted also that in 1942 the common council of the city of Detroit amended its zoning ordinance in such manner as to declare a housing emergency caused by the immigration of workers to

man war production plants, and to permit, during the period of such emergency, dwellings in R1 and R2 districts, as classified in the zoning ordinance, to be used for rooming-house purposes notwithstanding any provision otherwise in said ordinance. The amendment contemplated the obtaining, by the owner or occupant of any single or double residence so used, of a temporary permit authorizing the rooming-house use. This was not done in the instant case. Apparently the action of the common council was construed as a declaration of public policy based on the necessities of the situation brought about by the war, and, hence, as affecting the enforcement of building and use restrictions created by plats or conveyances. In a case instituted in January, 1946, against the owners of property described as 51 Edison avenue, within the Voigt Park Subdivision, a decree was entered declaring the property involved subject to the restriction inhibiting the operation of rooming houses. However, notice was taken of the ordinance of the city, and of the temporary permit that had been issued to the defendants in said case in accordance therewith, and the operation of the injunctive relief granted was stayed until 30 days after action by the common council declaring the termination of the housing emergency. Such declaration was not made until on or about August 1, 1949. Because of the decree of the trial court in the case mentioned, other proceedings that had been instituted to restrain violations of restrictions on the use of property in Voigt Park Subdivision were held in abeyance, or at least not pressed for hearing.

The somewhat unusual situation presented by this record is at variance with appellants' claim that plaintiffs should be deemed guilty of laches and estopped for that reason from seeking relief in the instant case, or that they were otherwise guilty of

inequitable conduct. The stipulation in the prior suit, on which the order of discontinuance was based, is significant in this connection. Numerous cases involving questions analogous to those presented have heretofore been considered and determined by this Court. In *Angeloff* v. *Smith,* 254 Mich 99, 101, it was said:

"The doctrine of laches is founded upon long inaction to assert a right, attended by such intermediate change of conditions as renders it inequitable to enforce the right. *Epstean* v. *Mintz,* 226 Mich 660.

"Where the right is not an executory one but is a vested legal title, the doctrine of laches has little, if any, application. 21 CJ, p 215. This is particularly true where the title is of record for the world to see."

The above statements were quoted with approval in *Taylor* v. *S. S. Kresge Co.,* 326 Mich 580, 590. Likewise, in *Boston-Edison Protective Ass'n* v. *Allen,* 293 Mich 668, 676, it was said:

"Appellants cite numerous cases in support of their contention that plaintiffs are estopped by reason of laches from maintaining their bill. Typical of these are *Thill* v. *Danna,* 240 Mich 595; *Boston-Edison Protective Ass'n* v. *Goodlove,* 248 Mich 625; and *Bigham* v. *Winnick,* 288 Mich 620. In all of these cases it appears that the plaintiffs made no objection during a long period of time and that during such time buildings were erected or improvements made by the defendants at costs running into many thousands of dollars. They are, therefore, clearly distinguishable. There is nothing in the record in the instant case that would indicate any financial loss to any of the defendants other than the loss of income or rentals in the future through violation of the restrictions in question."

See, also, as involving equitable principles applicable in a case of this nature, *Redfern Lawns Civic*

*Association* v. *Currie Pontiac Co.,* 328 Mich 463; *Jones* v. *Schaffer,* 332 Mich 190.

The trial court properly determined that plaintiffs were not precluded, under the factual situation involved, from seeking equitable relief against defendants. The violation of the restriction involved in the case was clearly shown. There is nothing in the record to justify a conclusion that plaintiffs were guilty of unreasonable delay or other conduct precluding them from seeking and receiving equitable relief essential to the protection of their rights. Other questions raised by appellants have been considered and found to be without merit.

The decree is affirmed. Plaintiffs may have costs.

Dethmers, C. J., and Adams, Sharpe, Boyles, and Reid, JJ., concurred.

Butzel and Bushnell, JJ., did not sit.