# STATE OF MICHIGAN

# COURT OF APPEALS

CHARTER TOWNSHIP OF LYON,

Plaintiff-Appellee,

v

JAMES E. PETTY, JUDITH PETTY, JAMES PETTY, JR., and PETTY TRUCKING,

Defendants-Appellants.

FOR PUBLICATION
October 13, 2016
9:00 a.m.

No. 327685
Oakland Circuit Court
LC No. 2014-141058-CE

CHARTER TOWNSHIP OF LYON,

Plaintiff-Appellee,

v

MARLENE HOSKINS and PAUL HOSKINS LANDSCAPING, INC.,

Defendants-Appellants.

No. 327686
Oakland Circuit Court
LC No. 2014-141059-CE

Before: FORT HOOD, P.J., and GLEICHER and O'BRIEN, JJ.

PER CURIAM.

The Petty and Hoskins families each own property in Lyon Township, which they use as their primary residences and the sites of their family-owned business operations. Their commercial uses have violated the township's zoning ordinance since they opened shop. As the residential neighborhood developed around them, these uses became problematic and the township enforced its ordinance by ordering a stop to the business activities. The circuit court, faced with competing summary disposition motions, upheld the township's zoning authority. We affirm.

## I. BACKGROUND

The Petty and Hoskins families each own acreage on Belladonna Road in Lyon Township. The land has been zoned R-1.0 Residential Agricultural since 1957. The Hoskins

-1-

family purchased their five-acre lot in 1969. The land was vacant and they quickly constructed a single-family residence. In 1970, the Hoskins family erected a 30 foot by 50 foot pole barn valued at $3,300. Their building permit application indicated: "Building to be used for storage." In 2012 and 2013, the Hoskins family built additions to the pole barn, each valued at $3,500. The Hoskins family asserts that they have always used the pole barn to store equipment and material for their landscaping business: Hoskins Landscaping, formerly known as Paul Hoskins Landscaping.

The Petty family bought a 13-acre lot neighboring the Hoskins family in 1977. The previous owners ran Nunday Trenching and Power Washing Company from the property and stored trucks and commercial equipment on site. The Petty family currently operates a truck storage facility on the land—Petty Trucking—and also stores materials such as brick pavers. They have conducted other commercial enterprises in the past. Although James Petty contends that his family has made "significant investments" and "improvements to the business," he provided no further detail in connection with this lawsuit.

It is undisputed that the Hoskins and Petty families operated their businesses without township interference for several decades despite that their uses were never permitted under their zoning classification. Defendants claim that township officials have visited their property several times over the years and never raised any concerns. Moreover, each presented commercial personal property tax bills connected with their Belladonna addresses. In the early days, other property owners on Belladonna Road put their land to similar uses. It is also undisputed, however, that the neighborhood's character has changed over time. Satellite images reveal that a large residential subdivision now runs along the properties' western borders. On Belladonna Road, simple farm houses have given way to modern homes of vast square footage on large lots. It appears that Hoskins Landscaping and Petty Trucking are the last local vestiges of the rural era.

Neighbors began complaining about noise and early morning activity at the landscaping and truck storage businesses. On October 14, 2013, the township sent identical "township zoning ordinance warning[s]" to Marlene Hoskins and James Petty. The township advised defendants that their business uses were not permitted in a residential zoning district and defendants had been in violation of the ordinance since the inception of their commercial enterprises. The notices continued, "Although portions of your business activities have existed for years, the Township would like to meet with you to discuss options available to bring your property into compliance with the zoning ordinance." Ultimately, the township sought judicial intervention to force the Hoskins and Petty families to cease their business operations in their current locations. Defendants filed a joint motion for summary disposition contemporaneous with their answers and the township responded with a summary disposition motion of its own. The circuit court agreed with the township's position and ordered the Petties' and Hoskinses' compliance with the zoning restrictions on their land. The Petties and Hoskinses now appeal.

## II. STANDARD OF REVIEW

We review de novo a circuit court's grant of summary disposition. *Zaher v Miotke*, 300 Mich App 132, 139; 832 NW2d 266 (2013).

A motion under MCR 2.116(C)(10) "tests the factual support of a plaintiff's claim." *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004). "Summary disposition is appropriate . . . if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). "In reviewing a motion under MCR 2.116(C)(10), this Court considers the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial." *Walsh*, 263 Mich App at 621. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West*, 469 Mich at 183. [*Zaher*, 300 Mich App at 139-140.]

We review de novo the applicability and merit of the equitable defenses raised by the Hoskins and Petty families. See *Mason v City of Menominee*, 282 Mich App 525, 527; 766 NW2d 888 (2009).

### III. ANALYSIS

Townships have statutory authority to enact and enforce zoning ordinances for the orderly planning of their communities. See MCL 125.3101 *et seq.* Zoning ordinances must be reasonable and promote "the public health, safety, morals, or general welfare." *Euclid v Ambler Realty Co*, 272 US 365, 395; 47 S Ct 114; 71 L Ed 303 (1926). Indeed, MCL 125.3201(1) of the zoning enabling act provides:

A local unit of government may provide by zoning ordinance for the regulation of land development and the establishment of 1 or more districts within its zoning jurisdiction which regulate the use of land and structures to meet the needs of the state's citizens for food, fiber, energy, and other natural resources, places of residence, recreation, industry, trade, service, and other uses of land, *to ensure that use of the land is situated in appropriate locations and relationships*, to limit the inappropriate overcrowding of land and congestion of population, transportation systems, and other public facilities, to facilitate adequate and efficient provision for transportation systems, sewage disposal, water, energy, education, recreation, and other public service and facility requirements, and *to promote public health, safety, and welfare*. [Emphasis added.]

To achieve these goals, "[i]t is the policy of this state and a goal of zoning that uses of property not conforming to municipal zoning ordinances be gradually eliminated." *Jerome Twp v Melchi*, 184 Mich App 228, 231; 457 NW2d 52 (1990). Whether and when to enforce its zoning ordinance to effectuate this gradual elimination is a matter within a township's discretion. 83 Am Jur 2d 893, § 936; *Randall v Delta Charter Twp*, 121 Mich App 26, 32; 328 NW2d 562 (1982) (quotation marks and citation omitted, alteration in original) ("[D]ecisions of a planning commission, or other similar local agency, concerning whether to enforce zoning ordinances are decisions which are so basic to the operation of a municipality that any attempt to create liability with respect thereto would constitute an unacceptable interference with [the municipality's]

ability to govern."). "[A]bsent extraordinary circumstances," courts will not interfere with such decisions. 2 Cameron, Michigan Real Property Law, § 23.30, p 1367.

One such "extraordinary circumstance[]" is the presence of a preexisting "nonconforming use." "A prior nonconforming use is a vested right in the use of particular property that does not conform to zoning restrictions, but is protected because it lawfully existed before the zoning regulation's effective date." *Heath Twp v Sall*, 442 Mich 434, 439; 502 NW2d 627 (1993). To be protected, the nonconforming use must have been legal at one time; a use that violates the zoning ordinances since its inception does not draw such protection. 1 Anderson, American Law of Zoning 3d, § 6.14, p 481. Defendants concede that their commercial activities have never conformed to the uses approved for their properties' zoning classification. Accordingly, defendants were required to find other "extraordinary circumstances" to demand the continuation of their businesses from their residential/agricultural properties.

In defense of the township's enforcement actions, the Hoskins and Petty families contended that the township's decades-long pattern of ignoring their zoning violations, and the investments they made in their businesses as a result, precluded the township from taking enforcement action now. To this end, the Hoskins and Petty families asserted laches and estoppel defenses. These defenses "are judicially disfavored" because they invite judicial interference into an area of local "public interest" and are "rarely applied in the zoning context except in the clearest and most compelling circumstances." 83 Am Jur 2d 894, § 937. And relevant to both, a historic failure to enforce a particular zoning ordinance, standing alone, is insufficient to preclude enforcement in the present. Anno: *Right of Municipality or Other Public Authority to Enforce Zoning or Fire Limit Regulations as Affected by its Previous Conduct in Permitting or Encouraging Violation Thereof*, 119 ALR 1509, 1511, § 111a. See also *Marzo v Abington Twp Zoning Hearing Bd*, 30 Pa Commw 225, 230; 373 A2d 463 (1977) ("[M]ere delay in enforcement does not create a vested right to use property in violation of zoning regulations.").

"The doctrine of laches is founded upon long inaction to assert a right, attended by such intermediate change of conditions as renders it inequitable to enforce the right." *Boston-Edison Protective Ass'n v Teahen*, 337 Mich 353, 360; 60 NW2d 162 (1953). "The application of the doctrine of laches requires the passage of time combined with a change in condition that would make it inequitable to enforce the claim against the defendant." *Yankee Springs Twp v Fox*, 264 Mich App 604, 612; 692 NW2d 728 (2004). To merit relief under this doctrine, the complaining party must establish prejudice as a result of the delay. *Id.*; *Gallagher v Keefe*, 232 Mich App 363, 369-370; 591 NW2d 297 (1998); *City of Troy v Papadelis (On Remand)*, 226 Mich App 90, 96-97; 572 NW2d 246 (1997). Proof of prejudice is essential.

A township can be equitably estopped from enforcing a zoning ordinance where:

"(1) a party by representation, admissions, or silence, intentionally or negligently induces another party to believe facts; (2) the other party justifiably relies and acts on this belief; and (3) the other party will be prejudiced if the first party is permitted to deny the existence of the facts. . . ." [*Howard Twp Bd of Trustees v Waldo*, 168 Mich App 565, 575; 425 NW2d 180 (1988), quoting *Cook v Grand*

*River Hydroelectric Power Co, Inc*, 131 Mich App 821, 828; 346 NW2d 881 (1984).]

Just as with a laches defense, prejudice is a mandatory element.

> The prejudice necessary to establish a laches or estoppel defense cannot be a de minimis harm. As described in 83 Am Jur 2d 894, § 937, the party fighting the zoning enforcement must show that he or she "made such a substantial change in position or incurred such extensive obligations and expenses that it would be highly inequitable and unjust to destroy the rights which he or she ostensibly had acquired." Courts have also held that the property owner must establish "a financial loss . . . so great as practically to destroy or greatly to decrease the value of the . . . premises for any permitted use." *Carini v Zoning Bd of Appeals*, 164 Conn 169, 173; 319 A2d 390 (1972). Precedent emphasizes the inadequacy of the evidence in this case.

> In *Oliphant v Franzo*, 381 Mich 630; 167 NW2d 280 (1969), a case in which the state intervened in an action to claim title to the subject land that had once been submerged under Lake St. Clair, *id.* at 631, the state "sat on its hands" and "did nothing" for 17 years "while homes were being built, streets paved, water and sewers installed, [and] taxes collected . . . ." *Id.* at 637. This was deemed sufficient prejudice to estop the state's interference. *Id.* at 636.

> In *Pittsfield Twp v Malcolm*, 375 Mich 135, 137; 134 NW2d 166 (1965), the defendant constructed and operated an animal kennel contrary to the township's zoning regulations. The township building inspector issued a building permit before construction. In reliance on that permit, the defendant expended $45,000 to erect his building. He then operated the kennel for nearly a year before the township attempted to stop the use. *Id.* The Supreme Court estopped the township from enforcing the zoning ordinance against the defendant. Not only did a township official issue a building permit (albeit in error) and the township wait 10½ months to take action, but the defendant also spent significant funds "for a specialty type building of otherwise doubtful utility." *Id.* at 148.

> In contrast, in *City of Troy v Papedelis (On Remand)*, 226 Mich App 90, 97; 572 NW2d 246 (1997), the defendant paved a residentially-zoned lot to use as parking for an adjacent greenhouse business. Although the building inspector "frequently visited the property" and was aware of the violation, the city waited three years to take action. *Id.* This Court found evidence of prejudice lacking:

>> Defendants have not demonstrated any prejudice that has resulted from plaintiff's delay in bringing this action to enjoin the use of the residential parcel as a parking lot for defendants' business. Although the evidence indicates that defendants paved part of their residential property to provide parking for the greenhouse business, there is no indication in the record that this action was taken in reliance on plaintiff's failure to initiate suit earlier. [*Id.*]

Rather, the defendant constructed the parking lot after the adjacent road was widened, eliminating several parking spots on the greenhouse parcel. *Id.* at 93.

> The Hoskins and Petty families brought their motion for summary disposition with inadequate proof of prejudice. The Petty defendants made no allegation and presented no

evidence regarding any expenditure or action to adapt or improve their property to suit their business. As such, the Petties created no question of fact on the element of prejudice and their claim fails as a matter of law.

The Hoskins family presented building permits for their original pole barn construction as well as two additions. These documents recite $10,300 in improvements. We first note that the issuance of building permits in this case did not establish knowledge on the part of the township. Marlene Hoskins and her now deceased husband applied for the original building permit only one year after erecting a single-family home on the property. The application indicated merely that the pole barn would be used for storage. The later permit applications for the additions include even less information. Accordingly, township officials had no reason to believe the pole barn would be used for commercial purposes. The documents reflect the construction of a pole barn for storage uses incident to a residential structure. Compare *Fass v City of Highland Park*, 326 Mich 19, 27-28; 39 NW2d 336 (1949), citing *Building Comm'n of the City of Detroit v Kunin*, 181 Mich 604; 148 NW 207 (1914) (in which the property owners sought city approval of their land use but then extended their uses to ones prohibited in the zoning district); *Valparaiso Bd of Zoning Appeals v Beta Tau Housing Corp*, 499 NE2d 780 (Ind Ct App, 1986) (where the defendant's 1971 variance application and 1973 and 1974 official discussions with city officials notified the city that the defendant intended to use the subject properties for a fraternity house, and the defendant expended $15,000 to remodel thereafter, the city was estopped from preventing the use); *Utah Co v Young*, 615 P2d 1265 (Utah, 1980) (allowing the county to enforce its zoning ordinance where the defendants applied for a permit to construct a "barn" on their agricultural property valued at $1,600 but then expended $23,000 to outfit the building as a public auction house).[1]

Moreover, neither set of defendants made any allegation that their property cannot be used for other purposes allowed under the zoning classification. A pole barn can be used for any number of activities, including serving as a garage for a residential structure. Similarly, a dirt parking area, like that on the Petty property, can be put to various uses. Accordingly, neither can establish that their expenditures were wasted or that their property is unfit for any use within the zoning classification. See *Mazo v City of Detroit*, 9 Mich App 354, 361; 156 NW2d 155 (1968) (holding the defendant would not be estopped from enforcing the zoning ordinance where the plaintiff spent $6,500 in reliance on erroneous approval from city officers, but there were no allegations that "her expenditures rendered her premises useless except as a bar").

The Hoskins family also presented no evidence that they expended $10,300 on their pole barn as a result of the township's inaction. In her affidavit submitted with the summary disposition motion, Marlene Hoskins averred, "We built a pole barn with Lyon Township's

---

[1] Both sets of defendants also presented personal property tax assessments in an attempt to establish the township's knowledge of their commercial uses of their property. These assessments merely show that the taxpayer who lives at a particular address owns commercial personal property, not that the taxable personal property is located or used at the taxpayer's address.

building permits specifically for our landscaping business and there was no problem with building inspections or the building's use." This statement contradicts the 1970 building permit application, which indicated simply that the pole barn would be used for storage. Given this plain and clear documentary evidence, the Hoskins family cannot show that they consulted with township officials regarding the legality of running their business from their property before its inception and therefore cannot establish a causal relationship for their initial investment.

In relation to the 2012 and 2013 additions, Ms. Hoskins alleged that "various Township Officials," including a former township supervisor, "have visited the property for a host of reasons" over the decades and yet raised no concerns regarding the Hoskins family's commercial enterprise or its compliance with the zoning ordinance. Ms. Hoskins contends that this complacency lulled her into believing it would be acceptable to extend the pole barn to create more room for Hoskins Landscaping's equipment. This case is distinguishable from *Papedelis (On Remand)*, 226 Mich App 90, in that no intervening cause, such as road construction, appears to have influenced the Hoskins family's recent expansion.

However, as a matter of law, $7,000 worth of additions to a storage barn fall short of the "substantial change in position" or "extensive obligations and expenses" necessary for equity to overcome a township's zoning authority. 83 Am Jur 2d 894, § 937. The 2012 and 2013 additions and their attendant costs are not comparable to the construction of a business facility open to the public as in *Malcolm*, 375 Mich at 137, or the planning and construction of an entire neighborhood like in *Oliphant*, 381 Mich at 637. See also *City of North Miami v Marguilies*, 289 So 2d 424 (Fl App, 1974) (finding a $650,000 investment sufficient to estop the city from enforcing its zoning ordinance). The enforcement of the township's zoning ordinance will work an inconvenience to the defendants who have operated their businesses for years without the expense of owning or leasing commercial property. That inconvenience, however, does not overcome the township's statutory authority to ensure that neighboring parcels maintain compatible uses.

Ultimately, both sets of defendants chose to pursue summary disposition based on their laches and estoppel defenses. Their evidence did not establish the prejudice necessary to continue their commercial enterprises on land surrounded by quiet residential property. Therefore, the circuit court properly determined that Lyon Township could enforce its zoning ordinance and order an end to defendants' commercial uses, which had always been prohibited on their residential/agricultural land.

We affirm.


/s/ Karen M. Fort Hood
/s/ Elizabeth L. Gleicher
/s/ Colleen A. O'Brien