# STATE OF MICHIGAN

# COURT OF APPEALS

TOWNSHIP OF WILLIAMSTOWN,

       Plaintiff-Appellee,

v

SANDALWOOD RANCH, LLC, ALEC
KOLENDA, and SARAH KOLENDA,

       Defendants-Appellants,

and

LOVE ADVERTISING, INC.,

       Defendant.

UNPUBLISHED
June 19, 2018

No. 337469
Ingham Circuit Court
LC No. 15-000570-CZ

Before: SHAPIRO, P.J., and M. J. KELLY and O'BRIEN, JJ.

PER CURIAM.

Defendants appeal the trial court's order granting plaintiff's summary disposition, including a permanent injunction, entered pursuant to MCR 2.116(C)(9) and (C)(10); and MCR 2.504(B)(2) and MCR 2.517 (involuntary dismissal). For the reasons set forth below, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

Defendant Sandalwood Ranch, LLC (Sandalwood Ranch), operates a commercial horse-boarding facility and riding arena in Williamstown Township (the Township). Defendants Sara and Alec Kolenda (the Kolendas) are the principal owners of Sandalwood Ranch.[1] The property contains a house in which the Kolendas reside, and a building that contains a barn with 26 stalls and a riding arena. On a second floor of that building, above the riding arena, there is an

---

[1] The property is owned by defendant Love Advertising, who purchased the property at a sheriff's sale, and thereafter leased the property to Sandalwood Ranch. Love Advertising was defaulted at the trial court level for failing to answer the complaint, and is not a party to this appeal.

apartment that has three bedrooms, a living room, bathrooms with showers, a dining room, and a kitchen, which defendants rented to other occupants who provided some care for the horses.

In December 2014, the Township notified the Kolendas that the use of the apartment, as a second dwelling on the property, violated § 18.02(A)(3) of the Williamstown Township Zoning Ordinance. This ordinance provides that (1) no building may be used as a second dwelling beyond the principal residence of the farm; and (2) no living quarters may be located in an arena building. Defendants responded that because the apartment fell within the protections of the Right to Farm Act (RTFA), MCL 286.471 *et seq*, it was not subject to the ordinance. The Township then filed this lawsuit claiming that because the apartment violates the ordinance, it is a nuisance per se, and sought injunctive relief. Following defendants' answer, the Township filed for summary disposition asserting that the apartment did not fall within the categories protected by the RTFA.

Noting that there were factual matters relevant to its ruling, the trial court scheduled an evidentiary hearing. Defendants presented evidence that the Kolendas each work full-time jobs off the farm but that each morning, they spent three hours on the farm performing the morning tasks of feeding, cleaning, and turning out the horses. Mrs. Kolenda testified that when she returns from work around 5:00 or 6:00 p.m., she brings the horses in, and that they hire stable workers to oversee the operation and the horses during the day while she is at work. She explained that it is also necessary to conduct a "night check" at about 10:00 p.m. This check does not involve any care of the horses, but is necessary to ensure that the horses were eating and defecating properly, and are not in distress. According to Mrs. Kolenda, they rented the apartment under an agreement whereby the tenant would perform the night checks in exchange for a reduction in rent. The tenant also agreed to report any unusual sounds or activities that they might hear during the night, which might require attention.

As it relates to this case, the two categories protected by the Act are "farms" and "farm operations." MCL 286.472(a), defines "farm" as

> the land, plants, animals, buildings, structures, including ponds used for agricultural or aquacultural activities, machinery, equipment, and other appurtenances used in the commercial production of farm products.

The second category, "farm operation" is defined in MCL 286.472(b) as

> the operation and management of a farm or a condition or activity that occurs at any time as *necessary* on the farm in connection with the commercial production, harvesting, and storage of farm products . . . . (Emphasis added).

The trial court quickly dispensed with the first issue, noting that the Township has not sought to prevent the use of the building that comprises the barn and arena, and that therefore, subsection (a) is not implicated. The court concluded that the controlling issue is how the building is used and whether using part of the building as a residence was a protected "farm operation."

Following the hearing, the court found that the apartment was "not necessary in the commercial farming of Sandalwood Ranch." The court issued an opinion from the bench stating in part, as follows:

[T]he statute says what it says. . . . . I'm ruling in regard to necessary . . . . [S]o one of the things that I did in this case is looked at the word necessary in Black's Law Dictionary, and when you read necessary, much of what you found in the statute the legislature pulled from Black's Law Dictionary, so I'm going to read a little bit of it to you. I'm not going to belabor the point. You'll be out of here in a few minutes, but I'd like to make my record so whichever of you so wishes, you may appeal me.

Necessary. This word must be considered in the connection in which it is used as it is a word susceptible of various meanings. It may import absolute physical necessity or inevitability or it may import that which is only convenience, useful, appropriate, suitable, proper, or conducive to the end sought. It is an adjective expressing degrees and may express mere convenience or that which is indispensable or an absolute physical necessity. It may mean something which in the accomplishment of a given object cannot be dispensed with or it may mean something reasonably useful and proper and of greater or lesser benefit or convenience and its force and meaning must be determined with relation to the particular object sought, and that part that I underlined, which I think has particular meaning to me was where it says, or that which is indispensable or an absolute physical necessity.

The testimony that I heard here today was very interesting to me because something or someone is useful or convenient does not mean that they are necessary, so I have to look, I have to ask, is it reasonably needed? Is it necessary? So listening to the testimony, this apartment, how it's used doesn't appear to me that there's any accountability, there's any real regularity, that there's a back-up plan for if a tenant has plans of their own. They certainly do not account to the lessor. If they go away for the holidays, if they're sick, if they go visiting, if they're out to dinner, they're not checking on the horses. This is too loose of an arrangement to say that it must be. It's a verbal agreement that does not contain anything about the horses, so if there's a dispute, it becomes a he said/she said or she said/she said. It may very well be a contract, and we all know there are such things as verbal contracts. This goes beyond a month to month living arrangement. It has other parts of a contract; the care of a horse. It's not just one hours. It's 20 to 30, maybe more at times.

\* \* \*

The problem here is that the apartment is not a necessity. You have two women who come in between certain hours for feeding the animals. That's a necessity. You have a specific arrangement with them. You can call them independent contractors, but I bet if you called them to come in at night, you could have your dinner with your husband, you could have a vacation with your parents, or Christmas dinner, whatever it is you wanted, as your back-up plan. This apartment is not a necessity. It's not necessary in the commercial farming operation of Sandalwood Ranch.

## II. ANALYSIS

## A. STATUTORY CONSTRUCTION

On appeal, defendants first argue that the trial court erred in concluding that MCL 286.472(b) applied in this case and not MCL 286.472(a). We disagree.[2]

Defendants do not dispute that Article 18 of the Williamstown Township Zoning Ordinance permit one dwelling per farm, which serves as the principal residence of the owner, operator, or employee(s) of the farm, nor do they dispute that Article 8 of ordinance prohibits living quarters in an arena building.

The RTFA was enacted in 1981 to provide for circumstances under which a farm and its operation shall not be found to be a public or private nuisance. *Northville Twp v Coyne*, 170 Mich App 446, 448; 429 NW2d 185 (1988); see also *Scholma v Ottawa Co Rd Comm*, 303 Mich App 12, 22; 840 NW2d 186 (2013). The RTFA provides, in relevant part, that "a farm or farm operation shall not be found to be a public or private nuisance if the farm or farm operation alleged to be a nuisance conforms to generally accepted agricultural and management practices according to policy determined by the Michigan commission of agriculture." MCL 286.473(1). The RTFA also expressly preempts local laws, including zoning ordinances, which conflict with the RTFA or applicable GAAMPs. MCL 286.474(6). The RTFA is an affirmative defense, and to successfully assert it as a defense, a party must prove two conditions: (1) the challenged condition or activity constitutes a "farm" or "farm operation," and (2) that the farm or farm operation conforms to the relevant GAAMPs. *Lima Twp v Bateson*, 302 Mich App 483, 496; 838 NW2d 898 (2013).

---

[2] The trial court's ultimate decision on a motion for involuntary dismissal under MCR 2.504(B)(2) is reviewed de novo, and the underlying findings of fact are reviewed for clear error. *Samuel D Begola Servs, Inc v Wild Bros*, 210 Mich App 636, 639; 534 NW2d 217 (1995). Clear error "occurs when the reviewing court is left with a definite and firm conviction that a mistake has been made." *Douglas v Allstate Ins Co*, 492 Mich 241, 256-257; 821 NW2d 472 (2012) (quotation marks omitted). Although plaintiff's motion was brought under both MCR 2.116(C)(9) and (10), we would review the motion under MCR 2.116(C)(10) because it is clear that the trial court considered evidence outside the pleadings when it ruled on plaintiff's summary disposition motion. See *Innovation Ventures, LLC v Liquid Mfg, LLC*, 499 Mich 491, 506–507; 885 NW2d 861 (2016). When reviewing a motion under MCR 2.116(C)(10), this Court "must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence in favor of the party opposing the motion." *Baker v Arbor Drugs, Inc*, 215 Mich App 198, 202; 544 NW2d 727 (1996). The motion is properly granted if (1) there is no genuine issue related to any material fact and (2) the moving party is entitled to judgment as a matter of law. See *Klein v HP Pelzer Auto Sys, Inc*, 306 Mich App 67, 75; 854 NW2d 521 (2014). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

As stated above, MCL 286.472(a) defines "farm" as

the land, plants, animals, buildings, structures, including ponds used for agricultural or aquacultural activities, machinery, equipment, and other appurtenances used in the commercial production of farm products.

Defendants contend that the apartment is part of the arena building, and that any use of the building falls within the definition of "farm" under § 2(a). Defendants misconstrue the statute. The building itself is protected under § 2(a) given its use as a barn and arena, which are plainly agricultural activities. However, this does not mean that every activity within the building is necessarily shielded from local regulation. Such a holding would immunize unlawful activity simply because it occurs in a farm building. Accordingly, like the trial court, we hold that the proper inquiry is whether the use of that apartment building in connection with the business of boarding horses is a protected "farm operation" under § 2(b).

Indeed, there is no dispute that the apartment structure itself is not in violation of the ordinance, and was within the definition of "farm" under § 2(a). In dispute however, is the use of the apartment structure as a residence, which violates the Township ordinance, and which has to be "necessary on a farm in connection with the commercial production, harvesting, and storage of farm products." MCL 286.472(b). Accordingly, § 2(b), not § 2(a), is implicated.

Next, defendants argue that even if § 2(b) applies, the trial court erred by finding that the use of the apartment as a second dwelling on the farm, was not *necessary* in connection with the boarding of horses. We disagree.

With respect to statutory interpretation,[3] this Court is required to give effect to the Legislature's intent. *Van Buren Co Ed Ass'n & Decatur Ed Support Personnel Assn, MEA/NEA v Decatur Pub Sch*, 309 Mich App 630, 643; 872 NW2d 710 (2015). The Legislature is presumed to intend the meaning clearly expressed, and this Court must give effect to the plain, ordinary, or generally accepted meaning of the Legislature's terms. *Lorencz v Ford Motor Co*, 439 Mich 370, 376; 483 NW2d 844 (1992). If a statute defines a word or phrase, that definition is controlling. *Orthopaedic Assoc of Grand Rapids, PC v Dep't of Treasury*, 300 Mich App 447, 451; 833 NW2d 395 (2013). "A statutory provision is ambiguous only if it irreconcilably conflicts with another provision, or when it is equally susceptible to more than a single meaning." *People v Fawaz*, 299 Mich App 55, 63; 829 NW2d 259 (2012) (quotation marks and citation omitted). Only when ambiguity exists does the Court turn to common canons of construction for aid in construing a statute's meaning. *People v Borchard-Ruhland*, 460 Mich 278, 284-285, 597 NW2d 1 (1999).

There are no published cases interpreting the definition of the word "necessary" as used in the RTFA. Defendants ask us to interpret the word broadly to mean "useful or proper," while

---

[3] We review questions of statutory interpretation de novo. *In re Wayne Co Treasurer Petition*, 478 Mich 1, 6; 732 NW2d 458 (2007).

plaintiff asks us to interpret the word narrowly to mean "absolutely essential, indispensable, or vital."

The testimony elicited at the evidentiary hearing reveals that the use of the apartment as a second dwelling by a tenant, who can perform the 10 p.m. check on the horses, is not necessary to defendants' horse-boarding business. Defendants' first tenant, who rented the apartment in 2013, performed the nightly checks and moved out in the summer of 2013. Afterwards, a second tenant stayed in the apartment for a year or a year-and-a-half, but did not perform the nightly checks on the horses. Mrs. Kolenda testified that they rented the apartment to this second tenant, without a discount, for $950 because they needed the income. After the second tenant moved out, defendants rented out the apartment to tenants who performed the nightly checks until April 2016, when they stopped. The Kolendas' testimony establishes that use of the apartment as a second dwelling by a tenant is a matter of convenience. While we do not accept the plaintiff's contention that "necessary" should be read to mean "absolutely necessary," it is clear that in this case, the rental of the apartment was intended to induce a third party to perform work that defendants had performed in the past and for which they could hire workers without providing a rental apartment. The fact that having a person other than themselves perform the night check was of assistance in providing the Kolendas with a desirable degree of flexibility and time off does not mean that such a tenant is "necessary" for farm operations under the RTFA. And the fact that the apartment rental also served as a source of non-farm income is clearly not an activity necessary to the farming operation. Put simply, defendants' use of the apartment as a second dwelling on the farm is not the type of activity that the RTFA was intended or designed to protect.

Accordingly, the trial court properly determined that the use of the apartment building was not necessary to the operation and management of the farm.

### B. AFFIRMATIVE DEFENSES

Next, defendants raised the equitable doctrine of estoppel and laches as precluding plaintiff's case. We hold that the equitable doctrines are inapplicable to the present case where defendants failed to provide factual support for the defenses.[4]

An affirmative defense must state the facts constituting such a defense. MCR 2.111(F)(3). Thus, a party must assert its defenses and has the burden of providing evidence in support. *Attorney General ex rel Dep't of Environmental Quality v Bulk Petroleum Corp*, 276 Mich App 654, 664; 741 NW2d 857 (2007). Only after such evidence has been introduced does the burden shift to the plaintiff to produce "clear and decisive evidence to negate" the defense. *Palenkas v Beaumont Hosp*, 432 Mich 527, 548; 550; 443 NW2d 354 (1989) (ARCHER, J.).

Defendants raised the defenses of estoppel and laches in their answer to the complaint. With respect to the defense of estoppel, defendants argued that the Township "is estopped from

---

[4] This Court reviews de novo the application of equitable doctrines. *Blackhawk Dev Corp v Village of Dexter*, 473 Mich 33, 40; 700 NW2d 364 (2005).

asserting that the use of the subject apartment violates any provision of its zoning ordinance because the Township, fully aware that the arena would contain the apartment now there, granted to the then-owner of the premises permission to build the arena inclusive of the apartment at issue." With respect to the defense of laches, defendants asserted that the Township "has known for many years, since its construction and before, of the presence of the apartment at issue, but has not, for those many years, taken any action to restrain the same. Now is much too late."

In *Lyons Charter Twp v Petty*, 317 Mich App 482, 490; 896 NW2d 477 (2016), vacated in part on other grounds 500 Mich 1010 (2017), this Court stated:

> The doctrine of laches is founded upon long inaction to assert a right, attended by such intermediate change of conditions as renders it inequitable to enforce the right. The application of the doctrine of laches requires the passage of time combined with a change in condition that would make it inequitable to enforce the claim against the defendant. To merit relief under this doctrine, the complaining party must establish prejudice as a result of the delay. Proof of prejudice is essential. [Quotation marks and citations omitted.]

Further, equitable estoppel arises where:

> (1) a party by representation, admissions, or silence, intentionally or negligently induces another party to believe facts; (2) the other party justifiably relies and acts on this belief; and (3) the other party will be prejudiced if the first party is permitted to deny the existence of the facts. . . . [*Howard Twp Bd of Trustees v Waldo*, 168 Mich App 565, 575; 425 NW2d 180 (1988) (quotation marks and citation omitted).]

"The general rule is that zoning authorities will not be estopped from enforcing their ordinance absence exceptional circumstances." *Id*. "Just as with a laches defense, prejudice is a mandatory element." *Lyons Charter Twp*, 317 Mich App at 490-491.

In support of their allegations, defendant relied on an affidavit from their counsel and two handwritten sketches attached to the affidavit. Defendants' counsel averred that he had received documents "pertaining to the parcel of land on which sits the structure at issue in this case" pursuant to a FOIA request, that he had reviewed the materials, and that he was "competent to authenticate the documents" attached to the affidavit. He averred in pertinent part as follows:

> 4. Also included among the documents provided in response to the FOIA request were multiple documents showing the title history of the property at issue, which history is summarized at the beginning of the brief submitted by Sandalwood Ranch, LLC, in opposition to the Township's motion for summary disposition.

> 5. Two handwritten sketches from the Township's file appear to be part of an application for a permit to build on the premises at issue a barn with an arena. Notations on it indicate that the permit application was from late 1992-1993. The sketches, which appear to have been drafted in the same hand as dated the permit application, make reference to an "upper apartment" with dimensions of 36 x 24

feet and show the placement in the proposed arena of a "24 x 36 apt on 2nd flr." Said sketches are attached hereto as Exhibits B and C.

6. Nothing in the documents provided by the Township indicates that the apartment was excepted from the permit granted by the Township, nor does anything indicate that, until the Township threatened Sandalwood Ranch with a civil infraction ticket in the Fall of 2014, any township official had expressed any concerns within the township government about the apartment known to be in the arena/barn or that anyone from the township ever communicated to Sandalwood Ranch, its principals, the owners of the land and structures at issue, or any of that owner's predecessors that the apartment in the area was of questionable validity under the Township's zoning ordinance.

Although defense counsel averred that he had reviewed documents related to the title history of the property, defendants did not produce the documents. Counsel did produce the handwritten sketches, but he merely provided his interpretation of what the sketches "appeared to be." Defendants did not produce evidence that would support the allegation that "plaintiff was fully aware that the arena would contain the apartment now there, granted to the then-owner of the premises permission to build the arena inclusive of the apartment at issue," nor did they produce evidence to support the allegation that the Township "has known for many years, since its construction and before, of the presence of the apartment at issue, but has not, for those many years, taken any action to restrain the same." Further, defendants made no allegation regarding prejudice as a result of any delay.

Therefore, defendants failed to meet the burden of producing evidence to support the affirmative defenses of estoppel and laches.

Affirmed. No costs may be taxed pursuant to MCR 7.319.

/s/ Douglas B. Shapiro
/s/ Michael J. Kelly
/s/ Colleen A. O'Brien