*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CHAMPION TOWNSHIP,

      Plaintiff/Counterdefendant-Appellee,

v

ROY PASCOE and GARY LAITALA,

      Defendants/Counterplaintiffs-
      Appellants.

UNPUBLISHED
February 2, 2023

No. 358584
Marquette Circuit Court
LC No. 17-055877-CE

Before: GLEICHER, C.J., and K. F. KELLY and LETICA, JJ.

PER CURIAM.

Defendants Roy Pascoe and Gary Laitala appeal by right the trial court's order granting summary disposition in favor of plaintiff, Champion Township, as well as the subsequent judgment entered ordering defendants to discontinue their nonconforming uses of the subject property and dismissing their counterclaims with prejudice. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

This case is before the Court for the second time. This Court's prior decision in *Champion Twp v Pascoe*, unpublished per curiam opinion of the Court of Appeals, issued July 18, 2019 (Docket No. 344609), pp 1-2, sets forth the background of the dispute:

> [T]he property at issue has been zoned for residential use. The local school district previously operated a school on the property pursuant to a lease. In 1984, the former owner of the property obtained a permit for a Class A nonconforming use that allowed the school to remain as it existed at the time of the application. The approved nonconforming use also extended to the structure of the school building and a bus garage on the property.
>
>       Pascoe purchased the property in 1995. In 2013, he leased some or all of the property to Laitala for operation of Laitala Excavating. In the fall of 2016, plaintiff's Zoning Administrator issued notices of zoning violations to defendants for operating a commercial business in a residential area. Plaintiff filed a complaint

in the circuit court in July 2017, requesting injunctive relief. Defendants admitted that Laitala operated Laitala Excavating on the property, but maintained that this was consistent with the prior nonconforming use allowed by the 1984 permit. Plaintiff responded that defendants' use of the property improperly extended and enlarged the prior nonconforming use.

Defendants also asserted that Pascoe had attempted to clarify the scope of the nonconforming use, but his efforts to have the Planning Commission hold a public hearing and issue a decision were blocked by the Zoning Administrator. In response, plaintiff noted that Pascoe's application to "change" the nonconforming use designation was returned to Pascoe multiple times for providing incomplete information.

Defendants moved to adjourn the two-day bench trial on plaintiff's complaint, arguing that the matter was not ripe for judicial review because the Planning Commission had not held a hearing and rendered a final decision on the use of the property. Plaintiff filed a motion for summary disposition under MCR 2.116(C)(9), contending that defendants failed to state a valid defense. The circuit court agreed with defendants . . . that the matter was not ripe for judicial review because the Planning Commission had not rendered a final decision on the use of the property.

This Court held that plaintiff's claim that defendants were currently violating the ordinance was "ripe for review notwithstanding that the planning commission *may* take action on the property in the future that will remedy the alleged violation." *Id.* at 3, citing *City of Hillsdale v Hillsdale Iron & Metal Co*, 358 Mich 377, 384; 100 NW2d 467 (1960) ("The object of the city was to have the ordinance enforced, not varied," which "required no previous proceeding before the board to consider a possible variance.").

On remand, the trial court denied plaintiff's motion for summary disposition under MCR 2.116(C)(9). Defendants filed counterclaims for abuse of process, violations of substantive and procedural due process, and an uncompensated taking. Plaintiff sought summary disposition under MCR 2.116(C)(10) as to its claim, and sought summary disposition under (C)(7) and (C)(10) as to defendants' counterclaims. The trial court granted the motion under (C)(10), concluding that "[t]he undisputed facts show that the Defendants are operating a commercial business that exceeds the size, the scope, and the nature of the use as a school bus garage, which the property was originally permitted for in connection with the Class A Nonconforming Use," which "is a nuisance, per se" that plaintiff "is entitled to have . . . abated . . . ." The court entered judgment in plaintiff's favor: (1) ordering defendants to cease their nonconforming uses of the subject property, "remove any and all front-end loader(s), bulldozer(s), excavator(s), backhoe(s), dump truck(s), three-axle and/or tandem-axle trailer(s), tracked vehicle(s), construction equipment, and/or any other items that violate Champion Township zoning ordinances"; (2) declaring that the "1984 Class A Nonconforming use permit is permanently eliminated"; and (3) dismissing defendants' counterclaims. This appeal followed.

## II. EQUITABLE ESTOPPEL AND LACHES

## A. STANDARDS OF REVIEW

This Court reviews a trial court's decision on a motion for summary disposition de novo. *Venesky v Sulier*, 338 Mich App 539, 543; 980 NW2d 551 (2021). "In reviewing a motion under MCR 2.116(C)(10), this Court considers the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial." *Walsh v Taylor,* 263 Mich App 618, 621; 689 NW2d 506 (2004). This Court also reviews de novo the application of equitable doctrines such as equitable estoppel and laches. *Sylvan Twp v City of Chelsea*, 313 Mich App 305, 315-316; 882 NW2d 545 (2015) (equitable estoppel); *Knight v Northpointe Bank*, 300 Mich App 109, 113; 832 NW2d 439 (2013) (laches).

## B. ANALYSIS

"Equitable estoppel may arise where (1) a party, by representations, admissions, or silence intentionally or negligently induces another party to believe facts, (2) the other party justifiably relies and acts on that belief, and (3) the other party is prejudiced if the first party is allowed to deny the existence of those facts." *21st Century Premier Ins Co v Zufelt*, 315 Mich App 437, 447; 889 NW2d 759 (2016) (quotation marks and citation omitted). Laches, or more formally "estoppel by laches," is defined as "the failure to do something which should be done under the circumstances or the failure to claim or enforce a right at a proper time." *Nykoriak v Napoleon*, 334 Mich App 370, 382; 964 NW2d 895 (2020) (quotation marks and citation omitted). Laches applies "to cases in which there is an unexcused or unexplained delay in commencing an action and a corresponding change of material condition that results in prejudice to a party." *Id.* (quotation marks and citation omitted).

A municipality may be equitably estopped from enforcing a zoning ordinance when " '(1) a party by representation, admissions, or silence, intentionally or negligently induces another party to believe facts; (2) the other party justifiably relies and acts on this belief; and (3) the other party will be prejudiced if the first party is permitted to deny the existence of the facts[.]' " *Charter Twp of Lyon v Petty*, 317 Mich App 482, 490; 896 NW2d 477 (2016), quoting *Howard Twp Bd of Trustees v Waldo*, 168 Mich App 565, 575; 425 NW2d 180 (1988). "The prejudice necessary to establish a laches or estoppel defense cannot be a de minimis harm," but rather must involve " 'such a substantial change in position or incurred such extensive obligations and expenses that it would be highly inequitable and unjust to destroy the rights which he or she ostensibly had acquired.' " *Petty*, 317 Mich App at 491, quoting 83 Am Jur 2d, Zoning and Planning, § 937, p 894.

In this case, plaintiff argued that Pascoe's activities on the property before renting to defendant Laitala were "debatable" with respect to whether they exceeded the scope of the nonconforming use permit in place, and conceded that plaintiff took no attendant action against him, but emphasized that it was the activities connected with Laitala's involvement "that really set this ball in motion." Plaintiff elaborated:

> It's . . . a use that has continually and systematically increased from a bus
> garage to now a full-blown commercial operation smack dab in the middle of a

residential area, and . . . this really came to a head in 2014 after Mr. Pascoe rented the property to Mr. Laitala.

Mr. Laitala has a large excavating company with large excavating equipment that he stored there, that he maintained, fixed, and he testified he would fix buckets, he would fix, you know, the engines if things went wrong, change oil, things like that. Couldn't fit the stuff inside the bus garage. Has to retrofit the building to allow access for the big equipment, put in, I think he said heat. He put in upgrades to electricity, built a workshop in there, and now relies upon this facility to run his commercial business out of. And that's where this all came to a head.

Plaintiff thus expressly disavowed reliance on Pascoe's activities before renting to Laitala as reason for the action to enjoin a zoning violation, and the trial court duly emphasized those activities when granting plaintiff the relief it sought. Plaintiff thus effectively undercut defendants' insistence that plaintiff's acquiescence in Pascoe's activities for those first several years of his ownership of the subject parcel constituted inaction on which he relied for purposes of invoking the doctrine of laches. And the trial court in turn focused on the expansion of uses occurring with Laitala's involvement when concluding that a nuisance per se should be abated.

On appeal, defendants repeatedly suggest that various municipal officers and entities offered encouragement about their operations, but defendant Pascoe testified that he purchased the subject property without having investigated any ordinances or permits related to it. Pascoe also admitted that he had nothing in writing from the planning commission or the township board indicating that there was any official motion or resolution that formally approved of his uses of the property, but instead had relied on such unofficial utterances or gestures as "letters of intent," "handshakes," and minutes of planning commission meetings.

Defendants also detail personal and political reasons why plaintiff's supervisor and zoning administrator involved with the zoning enforcement activities against them developed personal animosities toward defendant Laitala, implying that those officers' zeal for zoning enforcement was prompted by something other than civic duty. Defendants add that "[a]n immediate eviction of Mr. Laitala, as ordered by the trial Court, will put Mr. Laitala out of business, because he must have a suitable location to store and maintain his equipment." However, defendants do not explain why Laitala would have special difficulties relocating his business operations, nor do they cite authority for the proposition that zoning enforcement officers must cease any action against violators with whom they may have unrelated grievances. At issue here is whether the trial court failed to recognize the applicability of equitable doctrines, not whether plaintiff's new supervisor and zoning administrator had ulterior motives for their enforcement actions against Laitala.

The trial court correctly recognized that it was Laitala's activities that triggered the zoning enforcement activities, and correctly concluded that before that time, "any support for use of the property other than as a school and a bus garage was . . . tacit and opinion only." Further, with the latter remark, the court indicated that it considered defendants' argument that plaintiff's history of lax enforcement induced their reliance. Moreover, to the extent that defendants acted in reliance on informal assurances from earlier municipal authorities, or once-friendly relations with the new enforcement officers, defendants ran the risk that those authorities might in time pursue stricter enforcement of the zoning ordinance.

Further, defendants effectively admit that plaintiff did not delay in taking exception to the expanded use of the property. Defendants aver that Laitala began arranging for use of the "bus garage and environs" in 2013, and that in 2013 and 2014 defendant Pascoe was cited for zoning violations. It was at this same time the planning commission instructed Pascoe to obtain a survey and structure-detail statement, plus a change-of-use application in furtherance of a completed conditional-use permit.

When an action is commenced within the applicable limitations period, whatever the delay in filing is presumptively reasonable, and the doctrine of laches is inapplicable. *Mich Ed Employees Mut Ins Co v Morris*, 460 Mich 180, 200; 596 NW2d 142 (1999). The period of limitations for an action to enjoin a nuisance is six years. *Dep't of Environmental Quality v Waterous Co*, 279 Mich App 346, 383; 760 NW2d 856 (2008), citing MCL 600.5813. Pascoe began renting the subject property to Laitala in 2013, and the latter's activities engendering this litigation began in 2013 or 2014. Plaintiff commenced the action to enjoin the zoning violation on July 7, 2017—well within the limitations period—and thus rendering the defense of laches wholly inapplicable. See *Morris*, 460 Mich at 200.

## III. ZONING ENABLING ACT

### A. STANDARDS OF REVIEW

This Court reviews de novo the proper interpretation and application of statutes. *Norman v Dep't of Transp*, 338 Mich App 141, 147; 979 NW2d 390 (2021). The issue whether a trial court followed an appellate court's remand order is also a question of law subject to review de novo. *Schumacher v Dep't of Natural Resources*, 275 Mich App 121, 127; 737 NW2d 782 (2007). The applicability of the doctrine of the law of the case is also reviewed de novo as a question of law. *Duncan v Michigan*, 300 Mich App 176, 188; 832 NW2d 761 (2013).

### B. ANALYSIS

Defendants assert that the trial court "by-pass[ed] the . . . requirements of the Zoning Enabling Act[, MCL 125.3101 *et seq.*] . . . when it revoked Class A Nonconforming Use Permit," and that "a public hearing or a trial" is "a right enshrined under the Zoning Enabling Act." However, defendants entirely fail to specify what provisions of the act were violated. Indeed, the only current state statute mentioned in defendants' brief on appeal is inclusion in their table of authorities of MCL 125.3208, which says nothing about public hearings or revocation of nonconforming use permits. It is not this Court's responsibility to search the Zoning Enabling Act for provisions that might bear on defendants' argument. See *In re Toler*, 193 Mich App 474, 477; 484 NW2d 672 (1992); *In re Keifer*, 159 Mich App 288, 294; 406 NW2d 217 (1987) ("A party may not leave it to this Court to search for authority to sustain or reject its position.").

Defendants' insistence that the trial court should have refrained from entering relief without first deferring to plaintiff's planning commission is unconvincing, given that this Court already held that plaintiff's claim to enjoin a zoning violation was not contingent on such a future event as action from the planning commission, on the grounds that plaintiff "alleged that defendants are presently violating the ordinance," and that plaintiff's claim "is ripe for review

-5-

notwithstanding that the Planning Commission *may* take action on the property in the future that will remedy the alleged violation." *Champion Twp*, unpub op at 3. We stated:

> Plaintiff may seek abatement of zoning ordinance violations through the court. It has no obligation to ask the Planning Commission for clarification or alteration of the nonconforming use. Pascoe submitted an application requesting that relief, but the Zoning Administrator rejected it for a lack of information. So there is no pending application before the Planning Commission. In any event, plaintiff is not required to wait for a property owner to obtain a ruling from the Planning Commission before it can enforce the zoning ordinance. [*Id.* (citation and footnote omitted).]

This Court's rulings are the law of the case.[1] The trial court, therefore, properly acted on this Court's command that it exercise its jurisdiction without deference to what plaintiff's planning commission might do.

Defendants do not expressly argue that the trial court exceeded its authority on remand when it declared that the "1984 Class A Non-conforming use permit is permanently eliminated." Further, although defendants protest that plaintiff's zoning ordinance provides municipal avenues for revoking a nonconforming use permit, they cite no authority for the proposition that the circuit court lacks the authority to take such action when asked to enjoin a zoning violation.[2] For these reasons, defendants' invocation of the Zoning Enabling Act is unavailing.

Turning next to defendants' constitutional argument, defendants' statement of the questions presented includes a reference to equal protection, but no other constitutional doctrine. In their brief on appeal, defendants provide a heading, "**EQUAL PROTECTION**," and offer two sentences about plaintiff's sudden intolerance for the activities taking place on the subject property, with no citation to any authority. In their brief, defendants also include the heading, "**UNCONSTITUTIONAL**," followed by the assertion that the trial court's order requiring them to cease unapproved uses of the subject property was "an unconstitutional cessation constituting a deprivation of property rights out of proportion to the public benefit," citing *Austin v Older*, 283 Mich 667, 676; 278 NW 727 (1938). Defendants also include with their arguments relating to the Zoning Enabling Act the assertion that revocation of the nonconforming use permit on which they relied "is essentially a taking or a condemnation . . . under the Michigan and US Constitutions," with no citation to authority.

---

[1] "The law of the case doctrine holds that a ruling by an appellate court on a particular issue binds the appellate court and all lower tribunals with respect to that issue." *KBD & Assocs, Inc v Great Lakes Foam Technologies, Inc*, 295 Mich App 666, 679; 816 NW2d 464 (2012).

[2] Such questions as whether defendants may continue to use the property in ways coming under the Class A nonconforming use permit under MCL 125.3208(1) as continued nonconforming uses, and, if so, which of their uses aside from defendant Laitala's major excavating company operations actually fell within the scope of that permit, are not before this Court.

Because the only constitutional issue defendants included with their statement of the questions presented was a reference to equal protection, the other constitutional challenges are not properly before this Court. See *Grayling Twp v Berry*, 329 Mich App 133, 154; 942 NW2d 63 (2019) (stating that review of the issue was not appropriate because the appellants did "not raise this argument in their statement of questions presented before this Court."). Defendants have not offered any constitutional analysis, including with respect to equal protection, which constitutes abandonment of such issues. See *id*. at 154-155 ("An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue.") (quotation marks and citation omitted).

Affirmed. Plaintiff, as the prevailing party, may tax costs. MCR 7.219(A).

/s/ Elizabeth L. Gleicher
/s/ Kirsten Frank Kelly
/s/ Anica Letica