*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CITIZENS INSURANCE COMPANY OF
AMERICA and LOMBARDO HOMES OF SE
MICHIGAN, LLC,

        Plaintiffs-Appellants,

v

MIDWEST INTERIORS, LLC and HOME-
OWNERS INSURANCE COMPANY,

        Defendants/Third-Party Plaintiffs-
        Appellees,

and

PACIFIC DRYWALL, LLC and NGM
INSURANCE COMPANY,

        Third-Party Defendants-Appellees.

UNPUBLISHED
April 2, 2020

No. 346772
Washtenaw Circuit Court
LC No. 17-000094-CZ

CITIZENS INSURANCE COMPANY OF
AMERICA and LOMBARDO HOMES OF SE
MICHIGAN, LLC,

        Plaintiffs,

v

MIDWEST INTERIORS, LLC and HOME-
OWNERS INSURANCE COMPANY,

        Defendants/Third-Party Plaintiffs-
        Appellees,

and

No. 346805
Washtenaw Circuit Court
LC No. 17-000094-CZ

PACIFIC DRYWALL, LLC and NGM
INSURANCE COMPANY,

Third-Party Defendants-Appellants.

Before:  BECKERING, P.J., and SAWYER and GADOLA, JJ.

PER CURIAM.

In these consolidated appeals involving a dispute over insurance coverage and contractual indemnification liability, plaintiffs Citizens Insurance Company of America ("Citizens") and Lombardo Homes of SE Michigan, LLC ("Lombardo") (collectively, plaintiffs or "Lombardo/Citizens"), and third-party defendants Pacific Drywall, LLC ("Pacific") and NGM Insurance Company ("NGM") (collectively "Pacific/NGM") each appeal as of right the trial court's final order of declaratory judgment.  In Docket No. 346772, Lombardo/Citizens challenge the trial court's May 30, 2017 order to the extent that the court declined to order defendants and third-party plaintiffs Midwest Interiors, LLC ("Midwest") and Home-Owners Insurance Company ("Home-Owners") (collectively "Midwest/Home-Owners") to reimburse Lombardo/Citizens for defense costs accrued before Homeowners assumed Lombardo's defense.  In Docket No. 346805, Pacific/NGM argue that neither the contract between Midwest and Pacific, nor the NGM business liability insurance policy issued to Pacific, required Pacific/NGM to indemnify Midwest for the costs of defending and indemnifying Lombardo/Citizens.  In Docket No. 346772, we affirm in part, reverse in part, and remand for further proceedings.  In Docket No. 346805 we affirm that part of the order declaring Midwest an additional insured under Pacific's liability insurance policy with NGM, but reverse otherwise.

## I.  BASIC FACTS

This case concerns insurance and indemnification obligations in a worker's personal injury lawsuit against Lombardo, the general contractor of a residential development.  The issues on appeal involve which subcontractor must indemnify Lombardo, and which subcontractor's liability insurance policy provides coverage for the general contractor's defense and liability. Lombardo entered into a subcontract with Midwest, which in turn entered into a subcontract with Pacific.  Lombardo also entered into a subcontract with Ultimate Framing.  Each of the subcontracts required the subcontractor to indemnify the higher contractor, and to obtain liability insurance policies naming the higher contractor as an additional insured.  Lombardo was insured by Citizens.  Midwest was insured by Home-Owners.  Pacific was insured by NGM.  Ultimate Framing was insured by Farm Bureau.

Pacific's owner and sole employee, Glenn Barber, was injured when he fell into a basement after stepping onto a plywood board that provided a pathway over a hole in a house's incomplete porch.  It was initially believed that an employee of Ultimate Framing may have placed the plywood board.  Barber brought a personal injury lawsuit against Lombardo based on the common work area doctrine, claiming that it failed to take reasonable steps within its supervisory and coordinating authority to guard against readily observable and avoidable dangers that created a

high degree of risk to a significant number of workers.[1] In a third-party action, Lombardo/Citizens sought defense and indemnification coverage from Midwest/Home-Owners. Home-Owners agreed that it was obligated to defend Lombardo beginning on the date that Lombardo filed a third-party complaint. However, Midwest/Home-Owners asserted that Lombardo's claim for a defense before that date was barred by laches and estoppel because Lombardo had represented that it would rely on Farm Bureau or Citizens for defense and indemnification. Midwest/Home-Owners brought a fourth-party action against Pacific/NGM for defense coverage and indemnification. The trial court bifurcated the personal injury claim from the insurance coverage claims. In the bifurcated insurance proceeding, Lombardo/Citizens were plaintiffs, Midwest/Home-Owners were defendants and third-party plaintiffs, and Pacific/NGM were third-party defendants.

In the personal injury proceeding, the jury found Lombardo liable and rendered a verdict in Barber's favor in the amount of $649,989.58.

In the insurance proceeding, the trial court concluded that, although Home-Owners was required to defend and indemnify Lombardo, Lombardo's claim for reimbursement of defense costs was partially barred by the doctrines of equitable estoppel and laches. The trial court determined that Lombardo and Citizens had subrogation rights against Home-Owners. The court also concluded that Pacific's contract with Midwest obligated it to assume liability and defense costs for any claims against Midwest arising from the Barber suit, including those involved in Lombardo's claim for indemnification, and any obligation of Lombardo to pay the Barber judgment, as well as any costs and expenses incurred by Midwest in enforcing its and Lombardo's rights against NGM. The court further concluded that Midwest was an additional insured under Pacific's insurance policy with NGM, that NGM was obligated to provide coverage to and pay for the defense for Midwest and its indemnitee, Lombardo, for all claims arising out of the Barber suit, including the judgment. Finally, the court declared Home-Owners the equitable subrogee and/or assignee of Midwest's rights against Pacific and of the rights of Midwest and Lombardo against NGM.

## II. DOCKET NO. 346772

### A. EQUITABLE ESTOPPEL

Lombardo/Citizens first argue that the trial court erred by ruling that the doctrines of equitable estoppel and of laches barred their claim against Home-Owners for reimbursement of defense costs. We agree in part.

Midwest/Home-Owners does not dispute that Lombardo qualifies as an additional insured under the Home-Owners policy issued to Midwest, and that as an additional insured, the policy entitled Lombardo to a defense provided by Home-Owners. It is their position, however, that Lombardo was relying on Citizens and/or Farm Bureau for a defense, and therefore, Lombardo was equitably estopped from claiming reimbursement for legal expenses incurred before Lombardo exercised its rights as Home-Owners' insured. The trial court found that there was no

---

[1] Ultimate Framing was added as a defendant in Barber's first amended complaint, but discovery apparently led to the exculpation of Ultimate Framing and it was dismissed from the case.

genuine issue of material fact regarding Lombardo's delay in asserting its rights under the Home-Owners policy, and that Lombardo was therefore equitably estopped from recovering legal expenses incurred before May 30, 2017. The court therefore granted summary disposition for Midwest/Home-Owners under MCR 2.116(C)(10).

"This Court reviews de novo a trial court's decision on a motion for summary disposition." *Dye by Siporin & Assoc, Inc v Esurance Prop & Cas Ins Co*, 504 Mich 167, 179; 934 NW2d 674 (2019). Motions under MCR 2.116(C)(10) test the factual sufficiency of a claim. *Id*. The trial court must consider the parties' affidavits, pleadings, depositions, admissions, and documentary evidence "in the light most favorable to the party opposing the motion." *Id*. If there is no genuine issue of material fact except as to the amount of damages, the trial court must grant the motion. *Id*. The trial court's decision whether to apply an equitable doctrine is reviewed de novo. *Home-Owners Ins Co v Perkins*, ___ Mich App ___, ___; ___ NW2d ___ (2019) (Docket No. 344926), slip op at 4.

Two separate time periods are relevant to an analysis of this issue: (1) the period from November 16, 2015, the date of Lombardo's first purported tender of defense to Home-Owners, to October 13, 2016, the date of its second purported tender; and (2) the period from October 13, 2016, the date of the second purported tender, to May 30, 2017, the date that Home-Owners assumed Lombardo's defense.

The defense of equitable estoppel arises when:

> (1) a party by representation, admissions, or silence, intentionally or negligently induces another party to believe facts; (2) the other party justifiably relies and acts on this belief; and (3) the other party will be prejudiced if the first party is permitted to deny the existence of the facts. [*Twp of Williamstown v Sandalwood Ranch, LLC*, 325 Mich App 541, 553; 927 NW2d 262 (2018), quoting *Howard Twp Bd of Trustees v Waldo*, 168 Mich App 565, 575, 425 NW2d 180 (1988).]

"Equitable estoppel is not an independent cause of action, but instead a doctrine that may assist a party by precluding the opposing party from asserting or denying the existence of a particular fact." *Conagra, Inc v Farmers State Bank*, 237 Mich App 109, 140-141; 602 NW2d 390 (1999).

Lombardo/Citizens notified Farm Bureau of the *Barber* suit on October 20, 2015, and notified Home-Owners on November 16, 2015. There is no record of another written communication between Lombardo/Citizens and Home-Owners until January 26, 2016, when Allen Philbrick, counsel for Midwest/Home-Owners, wrote to Lombardo's counsel, advising:

> Home-Owners recognizes that Lombardo Homes of S.E. Michigan, LLC is an additional insured under the Midwest Interiors policy, to the extent of liability arising out of Midwest Interiors' work under its contract with Lombardo. Home-Owners also recognizes and will honor the duty to defend set forth in par 28(a) of the contract. Home-Owners further acknowledges the indemnity provisions of par 28(b), but notes that, "This indemnity does not extend to liability for claims to the extent such claims arise out of the negligence of a Lombardo party or other

independent contractor who are contractually responsible to Builder or to the extent such claims do not arise from or relate to the Work."

Philbrick referenced Lombardo's demand to Ultimate Framing, noting that the accident was allegedly caused by Ultimate Framing's negligent placement of a plywood cover. If the accident arose from work performed by Ultimate Framing, "it would eliminate the indemnity obligation of Midwest Interiors by virtue of the contractual responsibility owed by Ultimate Framing." Philbrick stated further:

> Nonetheless, we recognize that the duty to defend is broader than the duty to indemnify. However, based on discussions with Farm Bureau we understand that, in light of the apparently more direct involvements of its insured with the alleged negligence, Farm Bureau would prefer to provide, and will provide, the defense to Lombardo. Midwest Interiors and Home-Owners will defer to that decision, recognizing that if facts and circumstances change Lombardo could yet renew its demand for defense from Midwest Interiors/Home-Owners.

Although Philbrick's letter was not a prompt response to the November 2015 request, it was sufficient to put Lombardo/Citizens on notice that Home-Owners was not providing a defense because it believed that Lombardo was relying instead on Farm Bureau's defense. Under these circumstances, Lombardo's silence following Philbrick's January 26 letter caused Home-Owners to reasonably infer that Lombardo was not exercising its rights as an additional insured under the Home-Owners policy. Lombardo/Citizens argues that it had no duty to advise Home-Owners that it was electing to rely on it for a defense after it previously did so in November 2015. "Silence or inaction may form the basis for an equitable estoppel only where the silent party had a duty or obligation to speak or take action." *Conagra*, 237 Mich App at 141. If Midwest/Home-Owners inaccurately stated the circumstances of Farm Bureau's defense, Lombardo had a duty to correct that misunderstanding rather than continue its own plan of defense with the assumption that it could later seek reimbursement. Home-Owners did not refuse to provide coverage or deny its duty to provide coverage, but rather stated its belief that Lombardo was, at that time, forgoing its right to Home-Owners' coverage. It stated its intent to assume the defense whenever Lombardo exercised its rights. Accordingly, Lombardo's silence in these circumstances supports the defense of estoppel.

In addition, Lombardo's filing of its third-party claim in the *Barber* suit did not put Home-Owners on notice that Lombardo intended to seek a defense from Home-Owners. Lombardo filed the suit against Midwest, not Home-Owners, and sought only contractual indemnification, not a defense.

Lombardo/Citizens argues that Home-Owners could not reasonably believe that Farm Bureau was defending Lombardo, that Lombardo's corporate counsel was defending Lombardo, and that Lombardo suspended Home-Owners' obligation to defend. Lombardo/Citizens deny that they made any representation or undertook any action to cause Midwest/Home-Owners to believe that Lombardo voluntarily chose not to exercise its right to a defense by Home-Owners. They argue that Home-Owners either knew or could have found out that Lombardo was represented by Plunkett Cooney and not its own in-house counsel or counsel in Farm Bureau's employ. In the circumstances of this case, however, Lombardo bears responsibility for causing confusion by

tendering the defense to both Farm Bureau and Home-Owners, and failing to follow up with Home-Owners' January 26 correspondence. Lombardo/Citizens does not explain why it failed to respond to that correspondence. Home-Owners did not rely on an isolated representation from Farm Bureau, but on the full context of its communications with Lombardo and Farm Bureau. Home-Owners' belief that Lombardo would rely on Farm Bureau was reasonable in view of Ultimate Framing's perceived involvement in the accident at the time. The totality of these circumstances establishes the first two requirements of estoppel, that Lombardo/Citizens induced Home-Owners to believe that Lombardo had not yet sought a defense from Home-Owners, and that Home-Owners justifiably acted on this belief. *Twp of Williamstown*, 325 Mich App at 553.

Lombardo/Citizens also argue that Home-Owners was not prejudiced by any delay in tendering the defense because Home-Owners failed to allege that Plunkett Cooney's $250-hourly rate was excessive. The salient point, however, is that Home-Owners had no opportunity to participate in negotiations concerning the fee schedule. Accordingly, the trial court did not err by concluding that plaintiffs' claim for reimbursement of defense costs prior to Home-Owners' assumption of the defense was barred by estoppel with respect to the period before October 13, 2016.

However, the equivocal circumstances of Lombardo/Citizens' communications with Home-Owners following its first purported tender of defense do not apply to the period following Lombardo/Citizens' second tender of defense on October 13, 2016. Lombardo's counsel directly requested Home-Owners to confirm that it would defend Lombardo and participate in mediation. Upon receipt of this letter, Home-Owners was not justified in believing that Lombardo was pursuing its defense elsewhere. Therefore, the trial court erred by granting summary disposition in favor of Midwest/Home-Owners and by denying summary disposition for Lombardo/Citizens with respect to the period from October 13, 2016 to May 30, 2017. We therefore reverse in part the trial court's orders and remand for a determination of defense expenses for the period between October 13, 2016 and May 30, 2017.

## B. LACHES

"To successfully assert laches as an affirmative defense, a defendant must demonstrate prejudice occasioned by the delay." *Perkins*, ___ Mich App at ___; slip op at 9, quoting *Wells Fargo Bank, NA v Null*, 304 Mich App 508, 538; 847 NW2d 657 (2014). "Estoppel by laches is the failure to do something which should be done under the circumstances or the failure to claim or enforce a right at the proper time." *Wells Fargo Bank*, 304 Mich App at 537. "A party 'guilty of laches' is 'estopped' from asserting a right it could have and should have asserted earlier." *Perkins*, ___ Mich App at ___; slip op at 8-9. "The doctrine of laches is founded upon long inaction to assert a right, attended by such intermediate change of conditions as renders it inequitable to enforce the right. The application of the doctrine of laches requires the passage of time combined with a change in condition that would make it inequitable to enforce the claim against the defendant." *Twp of Williamstown*, 325 Mich App at 553, quoting *Lyon Charter Twp v Petty*, 317 Mich App 482, 490; 896 NW2d 477 (2016), vacated in part on other grounds 500 Mich 1010 (2017). "To meet relief under this doctrine, the complaining party must establish prejudice as a result of the delay. Proof of prejudice is essential." *Id*. The doctrine is applicable only where " 'there is an unexcused or unexplained delay in commencing an action and a corresponding change of material condition that results in prejudice to a party.' " *Dep't of Environmental Quality*

*v Gomez*, 318 Mich App 1, 29; 896 NW2d 39 (2016), quoting *Pub Health Dep't v Rivergate Manor*, 452 Mich 495, 507; 550 NW2d 515 (1996). The doctrine of laches may bar a claim even where the action is brought within the applicable limitations period. *Rowry v Univ of Mich*, 441 Mich 1, 11; 490 NW2d 305 (1992).

Lombardo/Citizens' delay in unequivocally informing Home-Owners of their decision to receive Home-Owners' defense is established by the same facts that support Home-Owners' estoppel defense. Lombardo needed only to inform Home-Owners that it intended to rely on Home-Owners' defense and that Home-Owners' understanding of the defense arrangements was mistaken. With respect to the material change of a condition, by the time Lombardo made its unequivocal request, it had accrued legal fees that were in excess of Home-Owners' rate, and over which Home-Owners had no influence. Accordingly, the trial court did not err by denying Lombardo/Citizens' summary disposition motion with respect to fees incurred before October 13, 2016. However, for the reasons explained in our discussion of estoppel, the trial court erred by applying the doctrine of laches for the period after the October 13, 2016 tender of defense. Laches is not a bar to Lombardo/Citizens' claim for reimbursement of defense expenses with respect to the period from October 13, 2016 to May 30, 2017.

## C. CLARIFICATION OF ORDER

Lombardo/Citizens argue that the trial court erred by failing to grant their motion to clarify the order regarding Pacific/NGM's obligation to pay defense costs and indemnify Lombardo. We disagree.

A plaintiff may assert a claim against a third-party defendant "arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff." MCR 2.204(A)(3). Although Lombardo/Citizens could have asserted claims against Pacific/NGM, they did not seek relief against Pacific/NGM until after the trial court decided Midwest/Home-Owners' summary disposition motion. In the trial court's first summary disposition order, it determined Lombardo/Citizens' rights and Midwest/Home-Owners' rights as to each other. In its second summary disposition order, it determined Midwest/Home-Owners' rights and Pacific/NGM's rights as to each other. Neither order determined rights and duties existing between Lombardo/Citizens and Pacific/NGM. Moreover, Lombardo/Citizens never asserted any claim against Pacific/NGM. Consequently, the trial court did not err by omitting the language requested by Lombardo/Citizens in the declaratory judgment.

## III. DOCKET NO. 346805

## A. PACIFIC'S CONTRACTUAL OBLIGATION TO INDEMNIFY MIDWEST

Pacific/NGM argue that the trial court erred in ruling that the Midwest-Pacific contract obligates Pacific to assume liability for Midwest's contractual obligation to indemnify Lombardo for claims arising out of the Barber suit. We agree. We review de novo questions concerning the interpretation and application of a contract. *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377-378; 836 NW2d 257 (2013).

In *Peeples v City of Detroit*, 99 Mich App 285, 294-95; 297 NW2d 839, 843 (1980), this Court stated the law applicable to the interpretation of indemnity agreements as follows:

Indemnity contracts, like other contracts, are to be enforced so as to effectuate the intentions of the parties. In ascertaining the intentions of the parties, one must consider not only the language used in the contract, but also the situation of the parties and the circumstances surrounding the contract. Indemnity contracts are construed most strictly against the party who drafts them, and against the party who is the indemnitee.

The indemnification provision in the Midwest-Pacific Agreement states, in pertinent part:

> Subcontractor [Pacific] agrees to indemnify and hold harmless Contractor [Midwest], and all of its employees . . . from any claim, suit, or action by any person or entity arising out of or in any way related to: a) Subcontractor's delivery of goods and/or materials to Contractor, b) Subcontractor's performance of work or services for Contractor, and c) Subcontractor's intentional and negligent actions that take place while on the project. In the event of any claim, suit, or action subject to this section, Subcontractor shall assume legal liability for the claim, suit, or action, and, as necessary, defend Contractor from the claim, suit, or action.

Midwest/Home-Owners argue that, according to this provision, Pacific agreed to indemnify and hold Midwest harmless from "any claim" "arising out of or in any way related" to Pacific's work for Midwest. Midwest/Home-Owners contend that Barber's claim against Lombardo for damages due to bodily injury, Lombardo's claim for indemnification against Midwest, and Midwest's claim for indemnification against Pacific, all arose out of Pacific's performance of drywall inspections for Midwest. Therefore, according to the terms of the indemnity clause in the Midwest-Pacific contract, Pacific is obligated to assume legal liability for all of these claims.

Pacific/NGM argue to the contrary that Midwest's claim for indemnity is not a claim arising from or in any way related to Pacific's performance of work. Instead, it arises from Midwest's voluntary contractual agreement to indemnify Lombardo, in the absence of which liability for Barber's injuries would not be attributed to Pacific.

Both sides rely on unpublished opinions from this Court to support their positions. Pacific/NGM rely on *Lynn v Detroit Edison*, unpublished per curiam opinion of the Court of Appeals, issued May 23, 2006 (Docket No. 258942), while Midwest/Home-Owners relies on *Baker Concrete Constr, Inc v Whaley Steel Corp,* unpublished per curiam opinion of the Court of Appeals, issued December 2, 2008 (Docket No. 272350). Neither the parties nor this Court has found published authority that is on all fours with the issue presented, and although neither of the opinions relied on by the parties is precedentially binding, MCR 7.215(C)(1), this Court may consider them as instructive or persuasive, *Paris Meadows, LLC v City of Kentwood*, 287 Mich App 136, 145 n 3; 783 NW2d 133 (2010).

The relevant issue in *Lynn* was whether the indemnity clause in Comcast's agreement with its subcontractor, Communication Construction Group, Inc (CCG), obligated CCG to indemnify Comcast, not only for a damages award against Comcast, but also for Comcast's contractual indemnification agreement with Detroit Edison (Edison). The plaintiff, an employee of CCG, was injured while servicing cables owned by Comcast that were attached to a utility pole owned by

Detroit Edison. *Lynn*, unpub op at 3. The plaintiff sued Edison, among others. *Id*. Edison filed a claim against Comcast pursuant to their indemnity agreement, which required Comcast to indemnify Edison for "any damages arising out of Comcast's use of the utility poles, except damages that were the result of the sole negligence of Edison." *Id*. Comcast, in turn, filed an action for contractual indemnification against CCG based on its indemnity agreement with CCG, which provided in pertinent part:

> CONTRACTOR [CCG] shall indemnify, defend and hold harmless OWNER [Comcast], its employees and agents, from and against:
>
> * * *
>
> b. All claims, liability, fines, penalties, damages, losses, costs, expenses, action, suits, judgments and executions (including but not limited to attorneys' fees) arising from or in connection with: a) the Work; b) the entry upon or possession of a work site by CONTRACTOR; c) The acts or omissions of CONTRACTOR or any other person for whom CONTRACTOR or any Subcontractor is responsible.…[*Id*. at 9.]

Edison, Comcast, and CCG settled the underlying action. Relevant to the issue at hand, the trial court concluded that CCG "was required to indemnify Comcast, both for Comcast's payment to plaintiff and Comcast's obligation to reimburse Edison." *Id*. at 4. CCG filed a claim of appeal in this Court.

On appeal, this Court held that the indemnification provision in the contract between Comcast and CCG obligated CCG to defend and indemnify Comcast against the injured plaintiff's claims against Comcast, but did not obligate CCG to indemnify Comcast's liability for Edison's settlement because Comcast's liability arose out of its contractual liability for indemnification, not out of the work CCG performed. The Court reasoned as follows:

> Despite the broad language in the [contract between Comcast and CCG] regarding indemnification, the indemnity owed by CCG is not without limitation. Indemnification pertains only to claims arising from or in connection with the work, the entry upon or possession of a work site by CCG, or the acts or omissions of CCG . . . .We agree with CCG that Comcast's liability for Edison's settlement with Lynn arises out of Comcast's contractual liability for indemnification, not the work undertaken by CCG. The liability is not connected with the work under the [contract between Comcast and CCG]. Absent Comcast's voluntary contractual agreement with Edison, liability for Edison's contribution would not be attributed to CCG because [it] is unconnected to CCG's conduct or performance under the [contract between Comcast and CCG].
>
> * * *
>
> The language of the indemnity agreement between Comcast and CCG is broad, but nevertheless is unambiguously limited to the nature of the subcontract work being performed by CCG, and does not encompass Comcast's indemnity liability assumed under a contract with a third party. [*Id*. at 10.]

Based on the foregoing reasoning, this Court concluded that the trial court had erred in "passing through to CCG, Comcast's liability for Edison's settlement with Lynn." *Id*.

We find the reasoning in *Lynn* persuasive. Like CCG's contract with Comcast, Pacific's contract with Midwest contained a broadly worded indemnification clause that required Pacific to indemnify and hold harmless Midwest from "any claim, suit or action" "arising out of or in any way related to" Pacific's delivery of goods or materials to Midwest, its work or services for Midwest, and any intentional and negligent actions Pacific commits while "on the project." Like CCG's contract with Comcast, Pacific's indemnification agreement was connected to Pacific's work for Midwest under the contract.[2] Just as CCG's alleged liability to Comcast to indemnify Comcast for Comcast's agreement to indemnify Edison arose from Comcast's voluntary contractual agreement with Edison, so Pacific's alleged liability to Midwest arises from Midwest's voluntary contractual agreement with Lombardo. Absent Comcast's agreement with Edison, liability for Comcast's indemnification of Edison for its contribution to the settlement in *Lynn* would not have been attributed to CCG. In similar fashion, absent Midwest's agreement with Lombardo, there would have been no basis for attempting to attribute liability for the damages awarded against Lombardo to Pacific. Absent a clear intention by the parties to grant Midwest the right to indemnification from Pacific for Midwest's contractual obligation to indemnify Lombardo, the trial court erred, in passing through to Pacific, Midwest's liability for the damages award against Lombardo. *Id*.; see also *Howe v Lever Bros Co*, 851 SW2d 769, 773 (Mo App, 1993) (declining to impose an identical obligation "in the absence of 'unequivocal terms' " in the indemnification agreement between the parties involved).[3]

Midwest/Home-Owners argues that this Court's reasoning should be governed by *Baker*, a more recent unpublished decision of this Court that also addressed a subcontractor's obligation to indemnify an "upstream" contractor, i.e., a contractor higher up the chain of contractual agreements, and that, according to Midwest/Home-Owners, "flatly repudiates *Lynn*." In *Baker*, a general contractor, Etkin Construction Company (Etkin), contracted with Edgewood Electric Company (Edgewood) and Baker Concrete Company (Baker) to perform work on a multi-story building. *Baker*, unpub op at 4. Baker contracted with Connelly Crane Rental Corporation (Connelly) and Whaley Steel Corporation (Whaley). *Id*. at 5. A Whaley employee was directing the Connelly-supplied crane operator as the operator lifted an object onto the ninth floor of the building when the object hit a stanchion, causing it to fall nine stories onto the plaintiff, an employee of Edgewood. *Id*. The plaintiff brought claims against Etkin, Baker, Connelly, and Whaley. A jury found that Etkin was 10% at fault, Baker was 25% at fault, and Whaley was 60%

---

[2] For example, Pacific agreed to indemnify Midwest for any damages arising from Pacific's failure to meet time and quality requirements (¶ 5), failure to timely pay employees and suppliers (¶ 17), and failure to comply with all federal immigration laws, rules, and regulations (¶ 21). If Midwest awarded Pacific work under a government contract, Pacific agreed to indemnify Midwest for any damages arising from Pacific's failure to comply with federal, state, and local employment laws (¶ 19), and with federal, state, and local safety laws, standards, and regulations (¶ 20).

[3] "Cases from foreign jurisdictions are not binding, but can be persuasive." *Holton v Ward*, 303 Mich App 718, 727 n 11; 847 NW2d 1 (2014), quoting *People v Campbell*, 289 Mich App 533, 535; 798 NW2d 514 (2010).

at fault.  The jury did not assign any fault to Connelly, but it found non-party Edgewood 5% at fault.  *Id*.  Based on various indemnity provisions, the trial court ordered that Baker, Whaley, Connelly, and Edgewood were each responsible for a ¼ share of the judgment against Etkin and that, in addition to their ¼ share, Whaley and Connelly had to indemnify Baker, thus making each responsible for ½ of Baker's ¼ share (as well as their own shares).  *Id*. at 6.  Four separate appeals and two cross-appeals were filed from the trial court's opinion and order.  Relevant here is Connelly's appeal of the trial court's conclusion that it was obligated to indemnify Baker and Etkin.  *Id*. at 8-10.

Connelly argued on appeal that the trial court should not have required the company to indemnify Etkin because Etkin was neither a party nor a third-party beneficiary of the Connelly-Baker contract.  *Id*. at 8.  This Court agreed that Etkin was not a party to the Connelly-Baker contract, but concluded that Etkin was a third-party beneficiary of the contract, basing its decision on two specific provisions in the Connelly-Baker contract.  First, the Court pointed to paragraph 3, which provided as follows:

> 3. Vendor [Connelly] acknowledges that it is bound to Baker by all terms of all contract documents, by reference or otherwise, that form a part of Baker's contract with respect to this project and assumes toward Baker all the obligations and responsibility that Baker assumes therein toward the owner or others insofar as they are applicable to the materials, equipment, services, workmanship and transportation furnished under this purchase order.  Copies of the applicable contract documents shall be made available to vendor upon request.  [*Id*. at 9.]

The Court concluded that, by agreeing to paragraph 3, "Connelly acknowledged that it was bound to Baker by all of the terms of Baker's contract with Etkin, and Connelly assumed all of Baker's obligations toward Etkin, including indemnifying Etkin[,]" and that "Etkin is a third-party beneficiary to the indemnification provisions of the Baker-Connelly contract."  *Id*.

The Court also found Connelly obligated to indemnify Etkin based on the language of paragraph 16 of the Connelly-Baker contract, which provided:

> 16.  Vendor [Connelly] agrees to indemnify and hold Baker harmless from any and all claims, demands, suits, and/or causes of action of any kind and nature whatsoever which may be brought against Baker by any supplier, subcontractor, laborer, owner, contractor, or any other person, organization or entity and any and all costs, expenses, settlements, and/or judgments related thereto, including but not limited to attorney fees, costs, and expenses which arise from or in any way relate to Vendor's performance of or failure to perform this purchases [sic] order.  [*Id*. at 10]

According to the Court's analysis, the language of paragraph 16 "promises indemnity from any losses, 'which arise from or relate in any way to [Connelly's] performance or failure to perform

[the] purchase order[,]' " without regard to fault.[4]  *Id.*  When Connelly relied on *Lynn* to argue that even if it was required to indemnify Baker, its obligation did not extend to Baker's obligation to indemnify Etkin, this Court distinguished *Lynn* by again observing that "in paragraph 16 of the Connelly-Baker contract, Connelly expressly agreed to indemnify Baker from any and all claims, of any kind and nature, including those brought by Etkin."  *Id.*

Midwest/Home-Owners relies on the Court's sentence distinguishing *Lynn* from *Baker* to argue that, just as Connelly was required to indemnify Baker's contractual obligation to Etkin because "Connelly expressly agreed to indemnify Baker from any and all claims, of any kind and nature, including those brought by Etkin[,]" *id.* at 10, so Pacific is required to indemnify Midwest/Home-Owners' contractual obligation to Lombardo because Pacific agreed to indemnify Midwest "from any claim, suit, or action by any person or entity[,]" including those brought by Lombardo.

In our view, however, Midwest/Home-Owners err to the extent that they understand Connelly's obligation to indemnify Baker's contractual obligation to Etkin as arising solely from Connelly's sweeping agreement to indemnify Baker from "any and all claims, of any kind and nature."  Reading paragraph 16 as a whole reveals that Connelly's liability to Baker is limited to those claims "which arise from or in any way relate to [Connelly's] performance of or failure to perform this purchases order."  *Id.*  Thus, as was the case with the contract at issue in *Lynn*, and as is the case in the Midwest-Pacific contract, Connelly's liability was not unlimited; rather, it was connected to its work for Baker.  More significantly, focusing on paragraph 16 as the sole reason why Connelly must indemnify Baker for its obligation to Etkin ignores this Court's analysis of the effect of paragraph 3, which obligated Connelly to assume all of Baker's "obligations toward Etkin, including indemnifying Etkin."  *Id.* at 9.  The Comcast-CCG agreement contained no such acknowledgment,[5] nor does the Midwest-Pacific agreement.

We conclude that the trial court erred in ruling that the Midwest-Pacific contract obligates Pacific to assume liability for Midwest's contractual liability to indemnify Lombardo under the circumstances presented here.[6]  Accordingly, we also conclude that Home-Owners does not have

---

[4] The contract had a separate paragraph relating to Connelly's indemnification of Baker for claims arising from Connelly's negligence.  *Id.*

[5] Contrary to the argument of Midwest/Home-Owners, *Baker* did not "flatly repudiate" *Lynn*. Furthermore, *Lynn* is not distinguishable from *Baker* based merely on the broad language in the Connelly-Baker contract.  CCG's contract with Comcast contained equally broad language, as CCG promised to indemnify Comcast from "all claims, liability, fines, penalties, damages, losses, costs, expenses, action, suits, judgments and executions."  It is not the scope of Connelly's promise that distinguishes *Baker* from *Lynn*, but the provision in paragraph 3 that the Court interprets to reflect Connelly's assumption of all of Baker's contractual obligations to Etkin.

[6] Given our disposition of this issue, we need not address Pacific's argument that it was not obligated to indemnify Midwest because Midwest's contract with Lombardo did not obligate it to indemnify Lombardo for damages caused by Lombardo's own negligence.

any rights of subrogation against Pacific relative to Midwest's claim of indemnity from its own contractual obligation to Lombardo relative to the Barber suit.

## B. NGM'S OBLIGATIONS TOWARD MIDWEST AND LOMBARDO

Pacific/NGM next contend that the trial court erred in declaring Midwest an additional insured under its liability insurance policy with NGM and that NGM is obligated by the terms of the policy to pay for the defense of Midwest and Lombardo in the Barber suit and related claims and to pay any related judgments against them. For the reasons stated below, we conclude that Midwest is an additional insured under Pacific's policy with NGM, but neither Midwest nor Lombardo are entitled under the terms of the policy to the payment of their defense in the Barber suit and related claims or to payment of the judgment against Lombardo.

The construction and interpretation of an insurance policy are questions of law, which we review de novo. *Dancey v Travelers Prop Cas Co*, 288 Mich App 1, 7; 792 NW2d 372 (2010). An insurance policy is a contractual agreement that must be interpreted pursuant to the law of contracts. *Citizens Ins Co v Pro-Seal Serv Group, Inc*, 477 Mich 75, 82; 730 NW2d 682 (2007); *Tenneco, Inc v Amerisure Mut Ins Co*, 281 Mich App 429, 444; 761 NW2d 846 (2008). The primary goal in the interpretation of a contract is to honor the intent of the parties. *Tenneco, Inc*, 281 Mich App at 444. An insurance policy that is clear and unambiguous must be enforced in accordance with its terms. *Stoddard v Citizens Ins Co of Am*, 249 Mich App 457, 460; 643 NW2d 265 (2002).

Determining whether Midwest is an additional insured under Pacific's policy with NGM involves the interpretation of the policy's Contractors Extension Endorsement, which contains the following provisions for "additional insureds":

### A.    Additional Insureds

Each of the following is added to Paragraph C. Who Is An Insured of BPM[7] P 2 – Section II – Liability but only as specifically described by the following:

**1.**    Any person(s) or organization(s) for whom you are performing operations is also an additional insured, when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage", "personal and advertising injury" caused in whole or part, by:

a.    Your acts or omissions; or

b.    The acts or omissions of those acting on your behalf;

---

[7] "BPM" designates a type of form.

-13-

In the performance of your ongoing operations or "your work" included within the "products-completed operations" hazard for the additional insured at the location designated and described in the written contract or agreement.

Pursuant to this provision, Midwest is entitled to coverage under NGM's policy as an additional insured if the following factors are met: (1) Pacific and Midwest agreed in writing that Midwest would be added as an additional insured under its policy with NGM; (2) potential liability derives from bodily injury, property damage, or personal and advertising injury; (3) the injury or damage is allegedly caused in whole or part by an act or omission of Pacific, or of someone acting on Pacific's behalf; and (4) the injury occurred during Pacific's performance of its work for Midwest.

Pacific's agreement to add Midwest as an additional insured under its insurance policy is contained in paragraph nine of the Midwest-Pacific Subcontractor Master Contract, thus satisfying the first factor. Any liability under the policy derives from Barber's bodily injury, which satisfies the second factor. The fourth factor is also satisfied because Barber's bodily injury occurred during the performance of his inspection duties for Midwest. The parties' dispute revolves around the third factor. Pacific contends that "liability for 'bodily injury' . . . caused in whole or part, by [Pacific's] act or omission" requires evidence of fault on the part of Pacific (i.e., Barber.) Because there was no such evidence, and considering that the jury did not find Barber comparatively negligent for his injuries, Pacific asserts that this factor is not satisfied. Midwest argues to the contrary that Barber's acts need only be a "but-for cause" of his injuries, and that, but for Barber's exiting the house he was inspecting and stepping onto the plywood walkway, he would not have been injured. Therefore, according to Midwest, the third factor is satisfied.

Both parties rely on *Hobbes v Shingobee Builders Inc*, unpublished per curiam opinion of the Court of Appeals, issued November 7, 2013 (Docket No. 307359), as support for their respective positions. The pertinent issue in *Hobbes* was whether the defendant contractors Clark and Gilbane were additional insureds under an insurance policy issued by State Auto insurance to Trend Millwork, for whom the plaintiff was performing work when injured. *Id*. at 6-7. The language in the State Auto policy defining "additional insured" was substantially similar to the language in the contract at issue in the present case. The trial court found that Trend Millwork "agreed in writing to add Clark as an additional insured and to extend liability insurance to Gilbane." *Id*. at 7. The trial court further found that "the possibility of plaintiff's comparative fault satisfied the language in the additional insured policy"[8] that an act or omission of Trend Millwork, or someone acting on behalf of Trend Millwork, "caused, in whole or in part" liability for bodily injury. Thus, the court concluded that Clark and Gilbane were additional insureds, and that State Auto had a duty to defend them from the plaintiff's tort claims. Agreeing, this Court reasoned:

> The plain language of the additional insured endorsements supports this interpretation. Plaintiff was an employee of Trend Carpentry, and Trend Carpentry

---

[8] The plaintiff twisted his back when he stepped on a pile of unbound copper pipes while moving a pallet of ceiling tiles. *Hobbes*, unpub op at 2.

was performing operations on behalf of Trend Millwork. Thus, the language of "acts or omissions of those acting on [Trend Millwork's] behalf" is satisfied. Moreover, plaintiff's comparative fault triggered the language of the policy because his acts or omissions caused, at least in part, liability for bodily injury that resulted in this litigation. [*Id*. at 8.]

Pacific argues that this quotation supports its position that, in order for Midwest to be an additional insured under its insurance contract with NGM, Barber had to be acting on behalf of Midwest, which he was, but that he also had to have some comparative fault in order to trigger the policy language, which he did not. Contrariwise, Midwest stresses the Court's use of the word "moreover" and interprets the foregoing quotation as providing alternate grounds upon which Clark and Gilbane could be deemed additional insureds of State Auto: (1) the plaintiff committed an act or omission; *or* (2) the plaintiff was found to have acted negligently. Applying the two perspectives to the case at bar, Pacific contends that Barber had to act *and* act negligently in order for Midwest to qualify as an additional insured under its policy with NGM, whereas Midwest contends that Barber had to act *or* act negligently. Thus, according to Midwest, the fact that Barber was inspecting drywall for Midwest when he exited the project and fell through the plywood board is sufficient to satisfy the requirement that Barber's act or omission "caused, in whole or in part," liability for bodily injury, regardless of whether his actions involved fault.

With regard to whether the phrase "caused, in whole or in part" requires a showing of fault, Midwest appears to have the better argument. *Merriam-Webster's Collegiate Dictionary*, (11th ed), defines "moreover" as "in addition to what has been said"; "besides." This definition supports Midwest's argument that, for purposes of determining whether it is an additional insured under Pacific's insurance contract with NGM, the phrase "caused, in whole or in part, by" does not require a showing of fault. Midwest's position also finds support in the discussion of the phrase, "caused by," found in *Orchard, Hiltz & McCliment, Inc v Phoenix Ins Co*, 146 F Supp 3d 879 (ED Mich, 2015).[9]

In *Orchard*, the federal district court considered whether a party was an additional insured under an endorsement requiring that bodily injury be "caused by" the acts or omissions of the named insured. Since the insurance contract did not define "caused by," the court consulted a dictionary. *Orchard*, 146 F Supp 3d 887, citing *Holland v Trinity Health Care Corp*, 287 Mich App 524, 527-528; 791 NW2d 724 (2010) (noting that courts may consult dictionary definitions to ascertain the plain and ordinary meaning of a term not defined in a contract). "Cause," the federal court observed, "is defined in its noun form as '[s]omething that produces an effect or result.'" *Orchard*, 146 F Supp 3d at 887, quoting *Black's Law Dictionary* (8th ed). The federal district court concluded from the definition of "cause" and the absence from the policy under consideration of any language requiring a preliminary determination of fault or negligence that

---

[9] Neither the parties nor this Court has found published authority interpreting the phrase "caused, in whole or in part," for purposes of determining whether a party is an additional insured under a policy of insurance. Although federal district court opinions are not binding on this Court, we may consider them for their persuasive value. See *Abela v Gen Motors Corp*, 469 Mich 603, 607; 677 NW2d 325 (2004).

"cause" in the context of the policy meant "the cause in fact or but-for cause of the injuries." See *Orchard*, 146 F Supp 3d at 887; see also *Walgreen Co v RDC Enterprises LLC*, unpublished per curiam opinion issued by the Court of Appeals, August 23, 2011 (Docket No. 293608), p 5 (concluding that coverage for liability "resulting from" the insured's work implies but-for causation and is not a fault-based limitation on coverage). Based on the foregoing, and considering that NGM could easily have drafted the relevant section to incorporate fault by requiring a "negligent" act or omission, we decline to read into the phrase, "caused, in whole or in part," a requirement of fault. To the extent that a fair reading of the phrase leads to the conclusion that there is coverage without fault on the part of the named insured, while another fair reading leads to the conclusion that coverage requires fault on the part of the named insured, the phrase is ambiguous, and must be interpreted against the insurer. *Stoddard*, 249 Mich App at 460. Accordingly, we conclude that Midwest is an additional insured under Pacific's insurance policy with NGM.

However, that Midwest is an additional insured under Pacific's policy with respect to Barber's injury does not mean that it was entitled to defense or indemnity from NGM. Pursuant to subsection A.1. of the liability section of the Businessowners Coverage Form, NGM will "pay those sums that the insured [which now includes Midwest in its definition] becomes legally obligated to pay as damages because of 'bodily injury…to which [the] insurance applies. [NGM] will have the right and duty to defend the insured against 'suit' seeking those damages." There are some exclusions. According to subsection B.1. of the liability section, the business liability coverage detailed in subsection A does not apply to bodily injury that the insured "is obligated to pay…by reason of the assumption of liability in a contract or agreement[,]" unless that contract or agreement is an "insured contract…." The policy defines "insured contract" as follows:

> That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for 'bodily injury'…to a third person or organization, provided the 'bodily injury'… is caused, in whole or in part, by you or by those acting on your behalf. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Pacific/NGM argues that NGM did not have a duty to defend Midwest against Barber's allegations of damages arising from bodily injury because Barber did not make any allegations against Midwest, and Lombardo's allegations against Midwest arose from a contractual agreement. We agree.

As this Court explained in *Detroit Edison Co v Mich Mut Ins Co*, 102 Mich App 136, 142; 301 NW2d 832 (1980):

> The duty of the insurer to defend the insured depends upon the allegations in the complaint of the third party in his or her action against the insured. This duty is not limited to meritorious suits and may even extend to actions which are groundless, false, or fraudulent, so long as the allegations against the insured even arguably come within the policy coverage.

"In a case of doubt as to whether or not the complaint against the insured alleges a liability of the insurer under the policy, the doubt must be resolved in the insured's favor." *Id.*

In September 2015, Barber filed a complaint against Lombardo alleging that a plywood board had been placed "by [Lombardo's] employees or subcontractors" over the porch hole at the front entrance of a construction project, that the board was not secured and did not have railings, and that when Barber exited the construction project by walking onto the board, the board shifted, causing Barber to fall approximately 12 feet into the porch hole below and to suffer severe injuries as a result. In July 2016, Barber filed a first amended complaint that differed from his initial complaint only by specifying that it was "Lombardo's and/or Ultimate Framing's employees and/or subcontractors" who placed the plywood board and by adding a count of negligence against Ultimate Framing. The only mention of Midwest in either complaint is Barber's factual allegation that at the time of his injury, he was performing drywall inspections for Midwest. Barber set forth no claims against Midwest in either complaint indicating that Midwest was liable in tort for damages arising from Barber's bodily injury, nor does the record suggest any tort liability on Midwest's part. NGM was not obligated to defend Midwest because Midwest required no defense.

Based on the factual allegations of the underlying complaint, we conclude that NGM did not have a duty to defend Midwest against Barber's allegations of bodily injury. The absence in the complaint and in the record of any basis in tort for Midwest's liability for Barber's injuries highlights the fact that Midwest's liability is triggered by its contractual agreement with Lombardo to indemnify Lombardo under certain conditions. Midwest seeks indemnification from Pacific for its contractual obligations to Lombardo, but the fact that Midwest's contractual liability is triggered by Lombardo's tort liability does not transform Midwest's contractual liability into tort liability. Because Midwest is not entitled to coverage under NGM's policy, Lombardo, who seeks coverage as Midwest's indemnitee, is also not entitled to coverage.[10] Furthermore, because NGM did not have an obligation to defend Midwest or its indemnitee, Lombardo, Midwest/Home-Owners does not have rights in subrogation against NGM.

## C. CONCLUSION

In Docket No. 346772, we conclude that the trial court did not err in holding that the doctrines of equitable estoppel and of laches barred Lombardo/Citizen's recovery of costs expended on Lombardo's behalf from November 16, 2015 to October 13, 2016. However, the trial court erred by ruling that Lombardo/Citizens was barred from recovering the defense costs

---

[10] Midwest asserts that it is entitled to the coverage and that Lombardo, as Midwest's indemnitee, is also entitled to the coverage under the "Coverage Extension – Supplementary Payments" section of the policy. Subsection (2) of this section provides, "If we [NGM] defend an insured [Midwest] against a 'suit' and an indemnitee of the insured [Lombardo] is also named as a party to the 'suit,' we will defend that indemnitee" if all of the enumerated conditions are met. NGM did not defend Midwest in Barber's claim, nor was Midwest entitled to a defense, as Barber set forth no claims against Midwest in either complaint indicating that Midwest was liable in tort. Accordingly, Midwest's indemnitee, Lombardo is not entitled to coverage under NGM's policy.

Lombardo incurred from October 13, 2016 and May 30, 2017, and we remand for the court to determine the amount Lombardo is entitled to recover in defense expenses incurred during this period. We also affirm the trial court's denial of Lombardo/Citizens' motion to clarify the order regarding Pacific/NGM's obligation to pay defense costs and indemnification to Lombardo.

In Docket No. 346805, we affirm that portion of the trial court's order declaring that Midwest is an additional insured under Pacific's policy with NGM. However, we reverse the trial court's ruling that the Midwest-Pacific contract obligates Pacific to pay the defense costs and indemnify Midwest for any claims arising from the Barber suit, including the judgment against Lombardo and Lombardo's claim for contractual indemnification. We also reverse the trial court's ruling that Midwest and Lombardo are entitled to coverage and defense costs under Pacific's insurance policy with NGM. Also reversed is the court's ruling that the Pacific-Midwest contract obligates Pacific to indemnify Midwest for any costs incurred in pursuing its rights or the rights of Lombardo against Pacific and NGM. Finally, because Pacific is not obligated to indemnify Midwest from its contractual indemnification agreement with Lombardo, and neither Midwest nor Lombardo are entitled to defense costs and coverage under the NGM policy, we reverse the trial court's ruling that Home-Owners is the equitable subrogee/assignee of Midwest's rights against Pacific or of Midwest's and Lombardo's rights against NGM in this matter.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Jane M. Beckering
/s/ David H. Sawyer
/s/ Michael F. Gadola

-18-